'reatening or injur-
n 152 (relating to
oaths and claims;
to commissions or
on 351 (relating to
per assassination),
3 (relating to cer-
ction 513 (relating
ate entities), sec-
ly classified), sec-
oods by means of
relating to smug-
ates), section 549
n Customs custo-
ic money, proper-
elating to theft,
by bank officer
ating to lending,
ns), section 658
d or pledged to
666 (relating to
grams receiving
or 798 (relating
ing to prohibited
aterials), section
on by explosives
or property af-
nmerce), section
unications), sec-
ul importation of
ing to firearms
to conspiracy to
in property in a
lating to fraudu-
g to fraudulent
1007[3] (relating
surance transac-
nt loan or credit
ng to computer
to concealment
er, or liquidat-
), section 1111
14 (relating to
forcement offi-
rder of foreign
tionally protect-
to kidnaping),
taking), section
f Government
destruction of
me and territo-
theft from the
sidential assas-
lating to bank
ion 2280 (relat-
avigation), sec-
ainst maritime
ating to copy-



CR 01-162
JRT/FLN

right infringement), section 2320 (relating to trafficking in counterfeit goods and services), section 2332 (relating to terrorist acts abroad against United States nationals), section 2332a (relating to use of weapons of mass destruction), section 2332b (relating to international terrorist acts transcending national boundaries), or section 2339A or 2339B (relating to providing material support to terrorists) of this title, section 46502 of title 49, United States Code, a felony violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals), section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the Controlled Substances Act (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal violations) of the Arms Export Control Act, section 11 (relating to violations) of the Export Administration Act of 1979, section 206 (relating to penalties) of the International Emergency Economic Powers Act, section 16 (relating to offenses and punishment) of the Trading with the Enemy Act, any felony violation of section 15 of the Food Stamp Act of 1977 [7 U.S.C.A. § 2024] (relating to food stamp fraud) involving a quantity of coupons having a value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 [42 U.S.C.A. § 1490s(a)(1)] (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938, or any felony violation of the Foreign Corrupt Practices Act;

(E) a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act (33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.); or

(F) any act or activity constituting an offense involving a Federal health care offense;

(8) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

(d) Nothing in this section shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this section.

(e) Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Postal Service, and the Attorney General. Violations of this section involving offenses described in paragraph (c)(7)(E) may be investigated by such components of the Department of Justice as the Attorney General may direct, and the National Enforcement Investigations Center of the Environmental Protection Agency.

(f) There is extraterritorial jurisdiction over the conduct prohibited by this section if—

(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

**(g) Notice of conviction of financial institutions.**—If any financial institution or any officer, director, or employee of any financial institution has been found guilty of an offense under this section, section 1957 or 1960 of this title, or section 5322 or 5324 of title 31, the Attorney General shall provide written notice of such fact to the appropriate regulatory agency for the financial institution.

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

**(i) Venue.**—(1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—

(A) any district in which the financial or monetary transaction is conducted; or

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

(2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

(3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be



EXHIBIT A

SCANNED
MAR 31 2005

# In The
# United States Court Of Appeals
# For The Eighth Circuit

Appellate Case No.

**04-1038**

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**OLUSOJI MICHAEL AGBOOLA,**

Defendant-Appellant,

Appeal from the United States District Court
for the District of Minnesota

**BRIEF OF APPELLANT**

By: David J. Chapman, Esq.
Attorney for Appellant
118 Broadway, Suite 806
Fargo, ND 58102
(701) 232-5899
(701) 232-6470 fax

Exhibit (a)

## STATEMENT OF ISSUES

**I. WHETHER THE DEFENDANT SHOULD BE PERMITTED TO WITHDRAW HIS PLEA AND PROCEED TO TRIAL BASED ON THE INEFFECTIVENESS OF HIS PREVIOUS COUNSEL?**

The four most apposite cases on this issue are: (1) *U.S. v. Abdullah*, 947 F.2d 306 (8th Cir. 1991); (2) *Strickland v. Washington*, 466 U.S. 668 (1984); (3) *Hernandez v. Cowan*, 200 F.3d 995 (7th Cir 2000); (4) *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

**II. WHETHER THE COURT ERRED IN DETERMINING THERE WERE VICTIMS AND IN CALCULATING THE AMOUNT OF LOSS, WHICH IN TURN INCREASED THE DEFENDANT'S BASE OFFENSE LEVEL?**

The four most apposite cases are: (1) *United States v. Oehlenschlager*, 76 F.3d 227 (8th Cir. 1996); (2) *United States v. Dickler*, 64 F.3d 818 (3rd Cir. 1995); (3) *United States v. Sheahan*, 31 F.3d 595 (8th Cir. 1994); (4) *United States v. Anderson*, 45 F.3d 217 (7th Cir. 1995).

**III. WHETHER THE COURT ERRED IN ALLOWING A PRE-SENTENCE INVESTIGATION AND EVIDENTIARY HEARING ON LOSS AND OTHER FACTORS, THUS, INCREASING THE DEFENDANT'S SENTENCE WITHOUT THE BENEFIT OF A JURY FINDING ON THE FACTUAL ISSUES?**

The four most apposite cases are: (1) *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) *Blakely v. Washington*, 124 S.Ct. 2531 (2004); (3) *Jones v. United States*, 526 U.S. 227 (1999); (4) *Ring v. Arizona*, 122 S.Ct. 2428 (2002).

**IV. WHETHER THE COURT ERRED IN NOT ACTING *SUA SPONTE* TO PREVENT IRS SPECIAL AGENT KATHY KLUG FROM TESTIFYING ON MATTERS REQUIRING AN EXPERT WITNESS WHERE COUNSEL FOR THE DEFENDANT WAS ASLEEP AT THE WHEEL?**

(1) LS0204 (4/00) Legal

STATE OF MINNESOTA FILED DISTRICT COURT-JUVENILE DIVISION

COUNTY OF HENNEPIN SEP 15 AM 9: 37 FOURTH JUDICIAL DISTRICT

HENN. CO. DISTRICT COURT ADMINISTRATOR

In the Matter of the Welfare of the Child of:

Rebecca Wheeler, Parent

**JUVENILE PROTECTION PETITION FOR LONG-TERM FOSTER CARE**

FAM ID No.: 249857
JC Case No.: J8-04-54733
CFSD Case No.: CP340147

Child: Victoria Onldosla Agboola, dob 9-15-88, Age 15, African American, Female, YID 2700066773Y

Petitioner, Hennepin County Children and Family Services Department, alleges that:

1. **The child who is the subject of this petition is as follows:**

**Victoria Onldosla Agboola**, dob 9-15-88
African American, Female
Current Residence: See Inaccessible Document
Home Address: 2309 Chicago Avenue So., Minneapolis, Minnesota
Tribal Affiliation: None Known

2. **The parents are as follows:**

A. Mother:
**Rebecca Wheeler**, dob 6-19-62
African American
Home Address: 2309 Chicago Avenue So., Minneapolis, Minnesota
Tribal Affiliation: None

1. The mother was not married when the child was conceived or when she was born and is the sole custodian under Minn. Stat. §257.541, subd. 1.

2. The mother is reported to also have other children, who are now adults.

B. Father:
**Olusoji Michael Agboola**, dob 9-1-62, Presumed Father of Victoria Agboola
African American
Current Address: Allenwood Low FCI
P. O. Box 1500, White Deer, PA 17887
Federal Inmate: 24468-018





Exhibit (c)

Tribal Affiliation: None Known

1. The Father has resided with Rebecca Wheeler and held the child out as his own. Michael Agboola is listed as the father on this child's birth certificate.

3. **The Parties to this proceeding include the following:**

**Marti Swanson**, Guardian ad Litem
Address: Juvenile Justice Center
626 South 6th Street
Minneapolis, Minnesota 55415

**Rebecca Wheeler**, Mother

**Olusoji Michael Agboola,** Father

**Hennepin County Children and Family Services Department**, Petitioner
Address: Health Services Building
525 Portland Avenue South
Minneapolis, Minnesota 55415

4. **The Participants to this proceeding are as follows:**

**Victoria O. Agboola**, Child

5. **Based upon information now known, the Indian Child Welfare Act is not applicable.**

6. **On April 5, 2004, the Hennepin County Children and Family Services Department filed a petition in Hennepin County District Court; Juvenile Division, alleging the child to be in need of protection or services (CHIPS).**

7. **On April 6, 2004, the Court ruled that a prima facie matter existed finding probable cause for CHIPS, with Victoria Agboola court ordered to remain in out-of-home placement. The mother of the child, Rebecca Wheeler entered a denial regarding the allegations made in the CHIPS petition. Other hearings and/or orders by the Court are as follow:**

7.1 On April 8, 2004, a Social Service Warrant was filed with the Court after Victoria Agboola ran from her shelter placement. She also had an outstanding warrant for 'failure to contact probation.'

7.2 At a pre-trial conference hearing held on May 11, 2004, Rebecca Wheeler failed to show up for this hearing.

7.3 At a Court hearing on July 21, 2004, Rebecca Wheeler appeared and told the Court

that she did not want services, saying that she could not parent her daughter.

8. **On April 2, 2004, Victoria was placed on a health and welfare hold due to Rebecca Wheeler refusing to make a plan for her daughter and being homeless herself. The child was not provided a permanent place to live since February 2004. Other details of Victoria's placement history include the following:**

- From age three (approximately), Victoria resided with her father, Michael Abgoola, and had little to no contact with her mother, Rebecca Wheeler.
- When Victoria was thirteen years old, Rebecca Wheeler traveled to Florida and removed her daughter from the care of her paternal aunt, Morenike Aihe. Victoria's father had placed her with his sister, when he was incarcerated to serve a criminal sentence. Ms. Aihe reported to CP that she has had a significant relationship with Victoria since the child was six months old. The father's anticipated release is reported to be 2010.
- Victoria lived with her mother for approximately two years and they were evicted from their apartment in February 2004. Her mother is alleged to be a chronic drug/alcohol abuser with a very lengthy history of addiction.
- When Victoria was interviewed just prior to the police hold in early April 2004, she stated that she had not seen her mother since February 12, 2004. Ms.Wheeler placed her daughter with a friend, although she herself did not reside there. This arrangement ended when the friend asked Victoria to leave, after the youth began arguing about rules. Victoria then resided with her boyfriends' family or other friends until she was placed on the police hold.

9. **Since Victoria's out-of-home placement was authorized in early April 2004, she has not been stable in the placements facilitated by the Human Services Department. Victoria is currently residing in a foster home, where she was placed on August 9, 2004. This was her fifth placement and the details of Victoria's moves are as follow:**

- In April 2004, Victoria ran from the "City Shelter" and later that month, she was picked up by the sheriff and placed in detention, as she had two outstanding warrants. She spent several days being held in detention.
- In early May 2004, the Juvenile Court ordered Victoria to shelter, until a relative or kin placement could be arranged. She was placed at Home Away Shelter.
- On July 2, 2004, Victoria was placed with Melanie Rivers, who is the mother of her three stepsisters. Ms. Rivers is the girlfriend of Victoria's father. On August 1, 2004, Ms. Rivers asked that Victoria be removed from her home as soon as possible due to problematic behaviors. Victoria was placed for six days back at Home Away Shelter.
- On August 9, 2004, Victoria was placed in foster care and both her adjustment, as well as her ongoing behavior are reported as 'good'. She is an eleventh grade student at Wayzata High School, where she receives Level III special education services. Victoria's progress at school thus far is also 'good'. On September 14,

2004, Victoria participated in her third individual therapy session with Dr. Javon Cleveland. She was going to T.A.M.S on a regular basis to receive a contraceptive injection.

10. **On August 2, 2004, Victoria Angola was charged with domestic assault. She was also charged with disorderly conduct and truancy within the last twelve months and currently is on probation. The probation terms and Victoria's progress are as follows:**

- The terms of her probation included that Victoria attend school; have no drug or alcohol use, providing random A's as requested; have no other similar offenses; cooperate with Project Support and complete eighteen hours of community service.
- The HSD child services worker reported that Victoria has now completed her court ordered community service hours.

11. **Rebecca Wheeler has repeatedly told CP that she would not complete a case plan and did not want to parent her daughter, Victoria. The Respondent Mother never agreed to nor followed through with the voluntary case plan, which the court ordered on April 6, 2004.**

The case plan included that the mother complete a chemical dependency evaluation at African American Family Services, following all recommendations; provide U.A.'s as requested; participate in a weekly parenting class/program at the Phyllis Wheately Center; obtain and maintain safe, suitable housing for herself and her daughter; and cooperate and meet with the CP caseworker once per month.

On April 20, 2004, Ms. Wheeler was provided with referrals for three of her five case plan goals. The CP worker provided a referral for a chemical dependency evaluation and follow up services at African American Family Services (AAFS). This referral included the details of address, phone number, etc. but also reminded the mother that this resource accepts individuals without insurance, schedules appointments but also accepts walk-ins on Thursdays. Ms. Wheeler was provided the name and phone number of Barbara Waxman at the Phyllis Wheatley Center to initiate her weekly parenting classes. She was also provided with housing assistance when the CP worker gave her the referral to the Rueben Lindh Program and explained that she could also utilize AAFS for this assistance.

Ms. Wheeler has not initiated a chemical dependency evaluation, nor has she responded to requests to document her sobriety with UA's. The CP worker provided Ms. Wheeler with UA's cards requesting toxicology screens on April 6, 27th and 30th.

Regarding parenting education, Ms. Wheeler never contacted Phyllis Wheatley to begin parent education classes.

Regarding stable housing, Ms. Wheeler has been receiving services through Our

Savior's Housing Program. This is a housing program that accepts adults only. On June 18, 2004, the CP worker contacted the staff at the above program to collaborate regarding Ms. Wheeler's case plan. The program staff stated that they would discuss the lack of progress with Ms. Wheeler and support her in completing her CP goals. HSD worker received a July 20, 2004 letter from the Our Saviour's Housing Program stating that Ms. Wheeler had been residing with them since April 1, 2004. The case manager stated that Ms. Wheeler was actively seeking employment, including training placement. The program was assisting her to seek financial aid for health occupation training. The letter also stated that the mother began counseling services at Lutheran Social Services for the issues that "have caused so much destruction in her life."

Ms. Wheeler has not maintained contacted nor been cooperative with the CP worker. She has failed three scheduled home visits with the worker on May 25th, June 11th and September 8th, 2004. Ms. Wheeler also failed to appear for a scheduled court hearing on May 11, 2004. The mother has been straight forward in repeatedly stating that she will not work on a case plan with CP and that she is not able to have her daughter, Victoria, reside with her.

**Rebecca Wheeler has a criminal history which includes being charged with Fifth Degree Assault (6-97) and Disorderly Conduct (8-95).**

**The Hennepin County Children and Family Services Department has made reasonable efforts to reunite the family by providing the following services:**

Chemical Health Rule 25 Assessment: African American Family Services (AAFS)
Child Protection Case Management
Child Services Case Management
Counseling –Individual for child
Diligent Efforts to Locate Parent
Foster Care
Housing Assistance: AAFS or Rueben Lindh Program
Kinship Search Services
Parenting Education: Phyllis Wheatley Center
Probation Services: Juvenile
Shelter Care
T.A.M.S.
Urinalysis

**The Hennepin County Children and Family Services Department has made diligent efforts to locate relatives to adopt or assume legal custody of the child. The current caregivers are not a resource for a transfer of legal custody or adoption.**

15. **The Department does not believe that a termination of parental rights or adoption is in the best interest of this child.**

Adoptive resources are likely not feasible, given the age of the child. the special needs of the child. because the child does not wish to be adopted and is of the age where due consideration must be given to hishertheir wishes.

16. **Long-term foster care is the permanency disposition that best meets the needs of this child. The child is twelve years of age or older.**

WHEREFORE, Petitioner requests an order that the legal custody continue with the Hennepin County Children and Family Services Department, and that the child shall be placed in permanent long-term foster care, pursuant to the provisions of Minn. Stat. §260C.201, Subd. 11(e)(3).

(T) LS0204 (3/00)
Legal

ner, by and through its undersigned agent, hereby verifies that the above allegations are the best of the petitioner's information and belief.

Ξ OF MINNESOTA )
) ss.
EPIN COUNTY )

Lauren Lighner-Peton, LICSW
Lauren Lighner-Peton, Social Worker
For the Hennepin County Children and
Family Services Department, Petitioner

ibed and sworn to this
day of September, 2004

Catherine Bishop
Public

CATHERINE G. BISHOP
NOTARY PUBLIC – MINNESOTA
My Commission Expires 1-31-2005

tition has been drafted under the supervision of the undersigned who believes that able grounds exist to support the allegations.

Frederic S. Stephens, License # 0215181
Assistant Hennepin County Attorney
525 Portland Avenue South, Suite 1200
Minneapolis, Minnesota 55415
Telephone (612) 348-3027
Fax (612) 348-9247

ıis 16th day of September, 2004

Clerk of District Court
ɔin County



Jnit\Cases\CHIPS\CPA0099425\WHEELER_REBECCA\LS LONG TERM FOSTER CARE PETITION.9-04.doc