UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CR-162 (JRT/FLN)
06-CVL-640 (JRT)

| | | |
|---|---|---|
| OLUSOJI MICHAEL AGBOOLA, | ) | |
| | ) | |
| Petitioner, | ) | RESPONSE OF THE UNITED STATES |
| | ) | TO DEFENDANT'S MOTION TO VACATE, |
| v. | ) | SET ASIDE OR CORRECT SENTENCE |
| | ) | PURSUANT TO 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

The United States of America, by and through its attorneys Rachel K. Paulose, United States Attorney for the District of Minnesota, and Michelle E. Jones, Assistant United States Attorney, herein responds to petitioner's Motion to Vacate, Set Aside or Correct His Sentence Pursuant to Title 28, United States Code, Section 2255.

Petitioner alleges that two of his three attorneys, Gary Bryant-Wolf ("trial counsel") and David Chapman ("appellate counsel") rendered ineffective assistance during the pendency of his case. Bryant-Wolf represented petitioner (hereinafter "Agboola") from early on in the pre-trial phase of the case through sentencing. Chapman represented Agboola after Agboola appealed his sentence and conviction.

## I. Factual and Procedural Background

From approximately April 1997 to March 2001, Agboola purchased real estate through various businesses that he owned and controlled including AG Properties and AGM Investment Corporation. These companies held title to real estate purchased by Agboola for short

periods of time and later resold the real estate to clients of Agboola's mortgage brokering company, Mortgage Advancement Corporation, at values far in excess of the purchase prices. Co-defendant Michael Aihe owned a company that provided real estate appraisals to Agboola's companies. The appraisals prepared by Aihe and submitted to lenders by Agboola fraudulently inflated the values of the properties sold by Agboola or one of his companies, resulting in lenders providing loan proceeds that often exceeded the true value of the real estate. Other fraudulent documentation and fraudulent financial transactions were also used by Agboola and others, at his direction, to obtain loan proceeds from lenders during the scheme.

On September 16, 1999, Agboola was served with a grand jury subpoena and a federal search warrant was executed at his home in Andover, Minnesota. During the course of the investigation of Agboola and his businesses, a newspaper article was published regarding the search warrant. (Presentence Investigation Report "PSR" ¶ 22.) Immediately thereafter, Agboola moved out of his Andover residence and closed a retail dollar store he owned and operated in Minneapolis. (Id.) Agboola fled the State of Minnesota in January of 2000. (Id.) On January 19, 2000, a criminal complaint was filed and a warrant issued for Agboola's arrest for mail fraud, bankruptcy fraud and money laundering. (Id.)

On April 13, 2000, a federal grand jury returned an indictment against Agboola in Criminal Case No. 00-100 charging him with 31

counts of bankruptcy fraud, mail fraud, money laundering, transactions in criminally derived property and perjury. (Id. ¶ 23.)

On March 20, 2001, Agboola was arrested by federal authorities in Lake Mary, Florida, while attempting to obtain money from a former client in exchange for a satisfaction of the fraudulent second mortgage Agboola held on her property. (Id. ¶ 25; Sentencing Evidentiary Hearing Transcript "Sent. Evid. Tr." at 159-64.) Agboola had been surreptitiously driven to the location of his arrest by his brother-in-law Michael Aihe, the person who provided the fraudulent appraisals during their real estate flipping scheme. (Id. at 159-60.) One week earlier, Michael Aihe had been informed by federal agents that a warrant existed for Agboola's arrest and that it would be a crime to assist him in evading arrest. (PSR ¶ 24.)

On April 13, 2001, a complaint was filed charging Aihe with obstruction of justice, in violation of 18 U.S.C. § 1503. An indictment was returned on April 30, 2001 against Aihe (Crim. No. 01-124) charging him with one count of obstructing justice, in violation of 18 U.S.C. § 1503.

On May 16, 2001, a 33-count superseding indictment was filed in Criminal Case No. 00-100 charging Agboola with bankruptcy fraud, mail fraud, money laundering, transactions in criminally derived property, perjury, use of a fraudulently-procured social security number and fraudulent concealment.

On June 12, 2001, a federal grand jury returned a 10-count indictment against Agboola and Aihe (Crim. No. 01-162), charging both with conspiracy, wire fraud, mail fraud and money laundering. Agboola was also charged with one count of engaging in a monetary transaction with criminally derived property.

On June 25, 2001, the United States moved to consolidate the three cases under a single case number. The three cases were consolidated by order of the district court On October 31, 2001.

On January 15, 2002, the grand jury returned a 44-count superseding indictment in Criminal Case No. 01-162 against Agboola and Aihe. Count 1 charged both defendants with conspiring to commit mail and wire fraud to obtain proceeds from mortgage loans based on false and fraudulent representations, in violation of 18 U.S.C. § 371. Counts 2 and 3 charged both defendants with mail fraud, in violation of 18 U.S.C. § 1341. Counts 4 through 7 charged both defendants with wire fraud, in violation of 18 U.S.C. § 1343. Counts 8 and 9 charged both defendants with aiding and abetting money laundering with the intent to promote, in violation of 18 U.S.C. §§ 2(a) and 1956(a)(1)(A)(i). Count 10 charged Agboola with engaging in a transaction with criminally derived property, in violation of 18 U.S.C. § 1957. Count 11 charged Agboola with bankruptcy fraud, in violation of 18 U.S.C. § 152(1). Counts 12 through 21 charged Agboola with mail fraud, in violation of 18 U.S.C. § 1341. Counts 22 through 25 charged Agboola with aiding and abetting money laundering with the intent to conceal, in

violation of 18 U.S.C. §§ 2(a) and 1956(a)(1)(B)(i). Counts 26 through 40 charged Agboola with engaging in transactions in criminally derived property, in violation of 18 U.S.C. § 1957. Count 41 charged Agboola with perjury, in violation of 18 U.S.C. § 1621. Count 42 charged Agboola with using a fraudulently procured social security number, in violation of 42 U.S.C. § 408(a)(7)(A). Count 43 charged Agboola with fraudulent concealment, in violation of 18 U.S.C. § 1001(a)(1). Count 44 charged Aihe with obstruction of justice, in violation of 18 U.S.C. § 1503.

On April 19, 2002, Aihe entered a guilty plea to obstruction of justice before this Court. On May 1, 2002, Agboola entered guilty pleas to committing wire fraud as part of his scheme to defraud lenders, engaging in monetary transactions with criminally derived property and bankruptcy fraud. Both defendants pled guilty pursuant to "wired" plea agreements, which required both defendants to plead guilty in order for the United States to be bound by the agreements.

On September 25, 2002, Agboola moved to withdraw his guilty plea.[1] By order dated November 15, 2002, the Court granted Agboola's motion to withdraw his guilty plea and vacated Aihe's guilty plea. The defendants proceeded to trial on January 21, 2003.

---

[1]Aihe did not join Abgoola's motion to withdraw his guilty plea.

On January 22, 2003, Agboola pled guilty to the bankruptcy fraud, perjury and fraudulent concealment counts in the superseding indictment, Counts 11, 41 and 43. Over the objection of the United States, the Court accepted Agboola's nolo contendere pleas to the remaining counts against him. Later that same day, Aihe entered guilty pleas to the ten counts involving conspiracy, mail fraud, wire fraud, money laundering and obstruction of justice with which he was charged in the superseding indictment, Counts 1 through 9 and 44.

The Court held sentencing evidentiary hearings on July 15, August 25 and August 26, 2003 to address disputed sentencing issues involving the number of victims, whether the victims were vulnerable, the amount of loss, sophisticated means, role in the offense and obstruction of justice. On December 10, 2003, the district court issued a Memorandum Opinion of Resolution of Disputed Sentencing Issues ("December 10, 2003 Opinion") in which it stated that numerous people were victimized by Agboola's real estate flipping scheme and suffered losses as a result of the scheme. (December 10, 2003 Opinion at 4.) Finding that the amount of loss attributable to Agboola's real estate flipping scheme was difficult to ascertain, the Court concluded that Agboola's pecuniary gain of $563,785 from the property flipping scheme would serve as the amount of loss for sentencing purposes. (Id.) The Court also determined that the amount of loss from the bankruptcy

fraud was $174,713, resulting in a total loss figure of $738,498. (Id. at 5.) In addition, the Court found that the number of victims exceeded 50, but concluded that no enhancement was applicable for vulnerable victims. (Id. at 6.) Also, the Court concluded that Agboola's offense level should be increased two levels for his managerial role in the offense, two levels for his use of sophisticated means to commit the crimes, two levels for his obstruction of justice, and three levels for perjury committed during his bankruptcy proceeding. (Id. at 6-10.)

On December 11, 2003, Agboola filed a number of pro se pleadings, including a second motion to withdraw his guilty plea on the grounds that he was innocent of the real estate flipping charges, a motion for credit against loss and a motion for downward departure.

At sentencing on December 19, 2003, the Court denied Agboola's motions, including the motion to withdraw his plea. The Court sentenced Agboola to 60 months of imprisonment on Counts 1, 11 and 41-43, and 108 months on Counts 2 through 10 and 12 through 40, to be served concurrently. The Court also ordered Agboola to pay restitution to several victims, jointly and severally with co-defendant Aihe, in the amount of $582,679.45.[2]

[2] The district court later reduced the amount of restitution owed by Aihe, jointly and severally with Agboola, to $335,990. (Second Amended Judgment in a Criminal Case, dated October 14, 2004, at 5.)

Through his counsel, Agboola filed a Notice of Appeal on December 29, 2003.[3]

On December 30, 2003, Agboola filed a pro se motion for a new trial. Agboola's motion for new trial was denied on March 22, 2004.

On January 13, 2004, the Court issued an Amended Opinion of Resolution of Disputed Sentencing Issues clarifying its factual findings regarding disputed sentencing issues under the 2000 federal Sentencing Guidelines.[4] The Amended Opinion did not change Agboola's sentence.

On March 29, 2004, Agboola filed a motion to substitute counsel, which was granted the next day. At that juncture, Agboola's appellate counsel, David Chapman, began to represent him in conjunction with his "trial counsel" Gary Bryant-Wolf. Agboola had previously moved pro se to dismiss Bryant-Wolf on April 24, 2003, but withdrew the motion on May 5, 2003. On May 17, 2004, Agboola filed another motion to remove Mr. Bryant-Wolf as his

---

[3] On August 13, 2004, co-defendant Aihe was sentenced to 10 months of imprisonment based on the district court's interpretation of Blakely v. Washington, 124 S.Ct. 2531 (2004). Aihe did not appeal his conviction or sentence.

[4] Prior to sentencing, the district court issued written findings regarding the application of relevant guideline provisions using the wrong Sentencing Guidelines manual. The district court made oral findings at sentencing using the correct manual, effective November 1, 2000. After sentencing, the district court issued an Amended Opinion of Resolution of Disputed Sentencing Issues to correct its prior written order and make it consistent with its oral pronouncements at sentencing.

counsel. Bryant-Wolf was removed as Agboola's counsel by the Court on July 13, 2004.

On May 7, 2004, the Court held a hearing for Agboola to show cause why he should not be ordered to sign satisfactions of four fraudulent second mortgages that he held on properties belonging to victims of his real estate flipping scheme. Agboola declined to execute written satisfactions of the mortgages as ordered. On May 17, 2004, Agboola filed an objection to the Court's oral order requiring him to forfeit his interest in the four fraudulent second mortgages, along with an order to stay pending appeal and notice of appeal of the Court's May 7, 2004 order that he relinquish his interests in the four properties at issue. On May 20, 2004, the Court issued a written order requiring Agboola to execute the four satisfactions of mortgage. On May 27, 2004, Agboola amended his Notice of Appeal to include the Court's May 20, 2004 order. On June 10, 2004, the United States requested that the Court issue an order voiding the fraudulent second mortgages. On June 14, 2004, the Court issued orders voiding Agboola's interests in the properties at issue.

On August 8, 2005, the Eighth Circuit affirmed Agboola's conviction and sentence concluding that (1) the testimony of special agent Kathy Klug was not expert in nature and the district court did not err in admitting it; (2) the district court properly grouped the promotion and concealment money laundering counts under

the Sentencing Guidelines; (3) though the district court committed Booker error in applying the Guidelines as mandatory, the error did not affect Agboola's substantial rights because he could not demonstrate that he would have received a more favorable sentence in the absence of the Booker error; (4) the obstruction of justice enhancement applied by the district court was proper; (5) the district court's determination that there were victims and losses from Agboola's crime was not clearly erroneous; (6) the district court did not err in determining the amount of loss caused by Agboola's crimes; and (7) the district court did not commit error in voiding Agboola's interest in certain fraudulently-obtained second mortgages. United States v. Agboola, 417 F.3d 860 (8th Cir. 2005).

## II. Discussion

### A. Ineffective Assistance of Counsel Standard

The Sixth Amendment of the United States Constitution guarantees a criminal defendant charged with a serious offense the right to effective assistance of counsel. Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir. 1996). The right to effective assistance of counsel applies on the appeal of a criminal conviction. Bell v. Lockhart, 795 F.2d 655, 657 (8th Cir. 1986).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that "counsel's performance was deficient" and that the defendant suffered prejudice as a result of the deficient

performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999). "Under the Constitution, a defendant is only guaranteed adequate, not exceptional counsel." Brown v. United States, 311 F.3d 875, 877 (8th Cir. 2002)(citing Strickland, 466 U.S. at 688). To show that counsel's performance was deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Tokar, 198 F.3d at 1045. The defendant must specify acts or omissions on the part of counsel that were not the "result of reasonable professional judgment." Id. at 690. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Dodd v. Nix, 48 F.3d 1071, 1073 (8th Cir. 1995). In the context of a guilty plea, the defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) The Court need not address both prongs of the Strickland analysis if the movant makes an insufficient showing under one of the prongs. Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

A reviewing court should "look at counsel's challenged conduct at the time of his representation of the defendant and . . . avoid

making judgments based on hindsight." Id. In evaluating counsel's performance, the Court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955). Matters of trial strategy and tactics do not generally constitute ineffective assistance of counsel, unless a tactical choice is wholly without reason. Riley v. Wyrick, 712 F.2d 382, 385 (8th Cir. 1983). In examining an ineffectiveness allegation, a reviewing court should consider "whether the result of the proceeding was fundamentally unfair or unreliable. United States v. White, 341 F.3d 673, 677 (8th Cir. 2003)(quoting Lockhart v. Fretwell, 506 U.S. 369 (1993)). A defendant faces a heavy burden to establish ineffective assistance of counsel under § 2255. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

B. Ineffective Assistance of Trial Counsel

Agboola claims that trial counsel was ineffective for (1) failing to move to sever the bankruptcy charges from the real estate flipping conspiracy charges; (2) failing to object to the testimony of Special Agent Kathy Klug as unqualified expert testimony; (3) failing to move to dismiss defective mail fraud, bankruptcy fraud and money laundering charges in the indictment;

(4) failing to investigate the case adequately and interview and subpoena defense witnesses, (5) inviting and condoning the Court's involvement in plea discussions in violation of Rule 11; (6) failing to object to the indictment on the basis of multiplicity and double jeopardy; (7) failing to object appropriately to the obstruction of justice enhancement; (8) failing to move to dismiss the forfeiture allegations; (9) improperly advising him to plead guilty despite his claim of innocence; (10) conspiring to re-open the restitution order when the Court was without jurisdiction; and (11) failing to object to the computation of loss and restitution. Petition at 2-3.[5]

Based on the alleged ineffective assistance rendered by his counsel, Agboola seeks, once again, to withdraw his guilty and nolo contendere pleas entered on January 22, 2003. Through his ineffective assistance claims, Agboola also attempts to relitigate issues that were raised in his direct appeal and decided against him. His efforts to relitigate claims already decided should be rejected.

1. Failure to Object to Kathy Klug's Testimony

Agboola asserts that trial counsel was ineffective in failing to object to the testimony of Special Agent Kathy Klug as

[5] Since the Petition was filed without page numbers, for ease of reference, the United States refers to the Petition by page number as if the document had been numbered starting with page one after the title page.

unqualified expert testimony. On direct appeal, Agboola argued that the district court abused its discretion in admitting Klug's testimony at the evidentiary hearing despite his failure to object to that testimony. After a plain error analysis, the Eighth Circuit "conclud[ed] Agent Klug did not testify to matters reserved for expert testimony." 417 F.3d at 865. "Thus, the district court committed no error, let alone plain error in admitting her testimony." Id. Agboola cannot relitigate in his section 2255 petition an issue that was raised and decided against him on direct appeal. See United States v. Dall, 957 F.2d 571, 572 (8th Cir. 1992)("[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.")(quoting United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981)(per curiam). Further, in view of the Eighth Circuit's determination that Klug did not offer expert testimony and this Court committed no error in admitting Klug's testimony, Agboola cannot prevail on his claim that defense counsel's failure to object to Klug's testimony constituted ineffective assistance. "The performance of an attorney is not deficient because the attorney failed to object to admissible evidence." Garrett v. United States, 78 F.3d 1296, 1302 (8th Cir. 1996); Anderson v. Goeke, 44 F.3d 675, 680 (8th Cir. 1995). Since any objection by Agboola's trial counsel would have failed, the failure to object did not constitute deficient performance. Therefore, Agboola's

ineffectiveness claim regarding counsel's failure to object to Klug's testimony fails.

2. Application of the Obstruction of Justice Enhancement

Agboola also seeks to relitigate the district court's application of a two-level enhancement for obstruction of justice pursuant to § 3C1.1(A) of the United States Sentencing Guidelines. On appeal, the Eighth Circuit concluded that the enhancement was proper based on Agboola's flight from the district and attempts to avoid arrest after he learned he was under investigation. 417 F.3d at 867-68. In his petition, Agboola attempts to relitigate this issue by arguing that defense counsel was ineffective for failing to argue this issue appropriately. Petition at 66. Having raised and lost this issue on appeal, Agboola may not revive this issue on collateral review. See Dall, 957 F.2d at 572; Shabazz, 657 F.2d at 190. Moreover, Agboola appears to equate ineffectiveness of counsel with a failure to prevail on the issues in the case. The law is not in accord with his view. Trial counsel was not ineffective in the manner in which he argued the obstruction issue simply because the district court, and ultimately the Eighth Circuit, did not agree with him. See Graham v. Dormire, 212 F.3d 437, 441 (8th Cir. 2000)(trial strategy not unreasonable and, thus, ineffective assistance simply because it fails). Agboola's intimations to the contrary should be rejected.

### 3. Amount of Loss

The third issue that Agboola seeks to relitigate that was decided against him on direct appeal is the district court's computation of the loss amount. Agboola claims that trial counsel was ineffective in the manner in which he argued the issue of loss and restitution to the sentencing court. Petition at 57-61. The amount of loss caused by the defendant's fraud was a hotly-contested issue at the evidentiary hearings held by the district court. Trial counsel argued that there was no loss or victims caused by Agboola's crimes. (See Memorandum Opinion on Resolution of Disputed Issues, dated December 10, 2003.) Agboola also appealed the Court's loss computation. On appeal, the Eighth Circuit rejected Agboola's claim that there were no victims or loss associated with his real estate flipping scheme and concluded that the district court properly determined the amount of loss. 417 F.3d 860, 868-70 (8th Cir. 2005). The Eighth Circuit held that in light of the difficulty involved in quantifying the victims' losses from Agboola's real estate flipping scheme, this Court did not err in using Agboola's pecuniary gain from a subset of flipping transactions undertaken in the case to arrive at the amount of loss attributable to Agboola. Id. at 870.

In his petition, Agboola attempts to offer an alternative theory of why the amount of loss figure should have been greatly reduced by the Court under the guise of an ineffective assistance

claim against trial counsel. Petition at 57-61. Here again, Agboola's ineffectiveness claim is a thinly-veiled attempt to relitigate the amount of loss issue that he raised and lost on direct appeal. His attempt at a third bite at the apple should be rejected. See Dall, 957 F.2d at 572; Shabazz, 657 F.2d at 190.

4. Severance

Agboola claims that trial counsel was ineffective for failing to move to sever the bankruptcy fraud counts (which Agboola appears to identify as Counts 11 and 41-43) from the real estate flipping counts in the Superseding Indictment (Counts 1-10 and 12-40). See Petition at 21-29. According to Agboola, the evidence of bankruptcy fraud was the strongest part of the Government's case and the evidence of the real estate fraud was weak. Id. at 23. Based on his analysis of the relative weight of the evidence as to each of the bankruptcy and real estate flipping charges, Agboola argues that trial counsel should have moved to sever the charges because "the spillover effect of the bankruptcy fraud evidence would have affected the real estate fraud case as well." Id. As a result, his nolo contendere pleas "would appear to make strategic sense." Id. Agboola contends that the prejudice caused by trial counsel's failure to move to sever the charges led to trial counsel's assertion of Agboola's innocence at the sentencing evidentiary hearings rather than a trial. Id. at 24. Agboola argues that he was "seriously prejudiced by the joinder of

unrelated counts, each alleging fraud or dishonesty in their very essence. The danger of evidentiary spillover was so great that the chance of severance was great." Id. at 28, 29. Agboola also states that he only pled guilty "because a failure to move for severance made the real estate counts appear un-winnable." Id. at 28.

Trial counsel was not ineffective for failing to move to sever the real estate flipping charges from the bankruptcy fraud charges in the Superseding Indictment. Federal Rule of Criminal Procedure 8 provides that two or more offenses may be charged in the same indictment so long as the offenses 'are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.' Fed.R.Crim.P. 8(a); United States v. Boyd, 180 F.3d 967, 981 (8th Cir. 1999). In applying the "same or similar character" standard, offenses may be joined when "'the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps.'" United States v. Lindsey, 782 F.2d 116, 117 (8th Cir. 1986)(quoting United States v. Shearer, 606 F.2d 819, 820 (8th Cir. 1979). "Rule 8(a) is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" Id. at 117

(quoting United States v. Werner, 620 F.2d 922, 926 (2d Cir. 1980)).

Agboola suggests that the real estate flipping offenses and the bankruptcy fraud offenses were distinct and would likely have been severed if trial counsel had moved for severance. Petition at 22-23, 29. Agboola's assumption that a severance motion, if made, would have been granted is misguided. The real estate flipping fraud counts of the Superseding Indictment (Counts 1-10 and 12-40) charged Agboola with engaging in a conspiracy to commit mail and wire fraud from approximately April 1997 until at least March 2001 by using companies he owned, namely Mortgage Advancement Corp. ("MAC"), AG Properties and AGM Investments Corp. ("AGM"), to facilitate fraudulent real estate transactions, and included mail and wire fraud and money laundering charges. MAC served as the mortgage broker in most of the fraudulent real estate transactions involving Agboola. Agboola used AGM and AG Properties to purchase properties then resell them at fraudulently-inflated prices to MAC customers. Count 11 charged Agboola with committing bankruptcy fraud by failing to disclose property and other assets belonging to his estate, including his interest in and control of MAC, AGM and AG Properties, as part of his bankruptcy petition. Count 41 which Agboola appears to consider part of the bankruptcy fraud counts, charged Agboola with perjuring himself at the creditor's meeting held as part of the bankruptcy proceeding in May 1998 when he

stated that he had no ownership interest in MAC. Count 43, which Agboola also appears to refer to as part of the bankruptcy fraud counts, charged Agboola with fraudulently concealing from the Social Security Administration on his 2000 application for a Social Security Card that he had already been issued a Social Security number and card in another name. Agboola's bankruptcy petition was filed using the other name, "Soji Agboola" and the social security number issued to him under that name. Agboola also used the Soji Agboola identity in many of the fraudulent real estate transactions.

As a result of Agboola's use of a fraudulent identity to perpetrate the real estate fraud, hide the assets derived from that fraud and engage in bankruptcy fraud, the proof for the real estate flipping fraud and bankruptcy fraud was overlapping and intertwined. The evidence as to Agboola's real estate flipping transactions and bankruptcy offenses were part of a common scheme or plan, namely, Agboola's scheme to enrich himself by obtaining mortgage loan proceeds fraudulently. Accordingly, the offenses were properly joined. See United States v. Davis, 103 F.3d 660, 676 (8th Cir. 1996); Lindsey, 782 F.2d at 117.

Once properly joined, a court may order separate trials of counts if "the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. "Prejudice may result from a possibility that the jury

might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when in would not have found guilt if the crimes were considered separately." Davis, 103 F.3d at 676. However, "a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." Id. There is a strong presumption against severing properly joined cases. United States v. Ruiz, 412 F.3d 871, 887 (8th Cir. 2005). Moreover, "the possibility that a defendant's chances for acquittal may be better in separate trials in an insufficient justification for severance." Id.

Because evidence of Agboola's bankruptcy and concealment offenses would have been probative and admissible in a trial on the real estate flipping fraud scheme, and vice versa, to prove, inter alia, motive, intent, plan, knowledge, identity and absence of mistake, even if trial counsel had moved to sever, there would have been no undue prejudice from the joinder of the offenses and no basis for the Court to sever the offenses for trial. See United States v. Brooks, 174 F.3d 950, 957-58 (8th Cir. 1999). Since Agboola would have been unable to prove undue prejudice under Rule 14, any motion to sever on that basis would likely have been unsuccessful. Thus, trial counsel's failure to file a severance motion was neither deficient nor prejudicial. See Dyer v. United

States, 23 F.3d 1424, 1426 (8th Cir. 1994)(counsel is not ineffective if claim defendant asserts counsel should have pursued is meritless); Garrett v. United States, 78 F.3d 1296, 1303 n. 11 (counsel is not ineffective for failing to perform acts which appear to be futile or fruitless at the time the decision must be made); Deroo v. United States, 223 F.3d 919, 925-26 (even assuming deficient performance of counsel, where there was no reasonable probability that a motion to dismiss the indictment would have been successful, defendant's ineffective assistance claim fails for lack of prejudice). Accordingly, trial counsel was not ineffective for failing to file a motion to sever the real estate charges from the bankruptcy related-charges in the Superseding Indictment.

5. Failure to Move to Dismiss Defective Mail Fraud and Bankruptcy Counts

Agboola asserts that trial counsel was ineffective for failing to move to dismiss the mail fraud allegations in Counts 2 and 3 as defective. Counts 2 and 3 of the Superseding Indictment charge Agboola and Aihe with causing a $10,600 check to be sent through the United States mail as part of the scheme to defraud on May 8th and 9th of 1998. Agboola argues that because the loan transaction at issue in those counts was completed on May 6, 1988 and the check related to that transaction and which forms the basis for Counts 2 and 3 was not mailed until May 8th and 9th, after the completion of the transaction, the mailing of the check was immaterial to the

scheme; therefore, the counts are defective because there was no nexus between the mailing and the crime. Petition at 34-36.

Similarly, Agboola argues that trial counsel was ineffective for failing to move to dismiss the mail fraud counts related to his fraudulent bankruptcy petition (Counts 12-21) on the grounds that they were defective. According to Agboola, because the mailings at issue were sent by the bankruptcy court, rather than him, in the regular course of a Chapter 7 bankruptcy proceeding, the counts were defective. Id. at 36-38.

Agboola's arguments with respect to the alleged deficiency of the mail fraud counts is actually a challenge to the sufficiency of government's proof rather than the legal sufficiency of the Indictment. However, by entering his nolo contendere pleas to Counts 2, 3 and 12-21, Agboola relinquished his right to put the government to its proof on these counts. "It is well-settled that a plea of Nolo contender constitutes an admission of 'every essential element of the offense (that is) well pleaded in the charge.'" United States v. Frederickson, 601 F.2d 1358, 1365 n.10 (8th Cir. 1979)(quoting Lott v. United States, 367 U.S. 421, 426 (1961). As a result, Agboola's challenge to the sufficiency of the government's proof regarding the mail fraud counts should be summarily dismissed.

Moreover, Agboola has procedurally defaulted his claim that the mail fraud charges in Counts 2, 3 and 12-21 were defective.

"The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion, and this rule applies equally when the conviction was entered pursuant to a guilty plea." Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998)(citations omitted); see also McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001)(citing Bousley, 523 U.S. at 622). "Ineffective assistance of appellate counsel may constitute cause and prejudice" to negate a procedural default. Boysiewick v. Schriro, 179 F.3d 616, 619 (8th Cir. 1999); United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

A mail fraud conviction requires proof a defendant "(1) voluntarily and intentionally devised or participated in a scheme to defraud, (2) entered into the scheme with the intent to defraud, (3) knew it was reasonably foreseeable that the mails would be used, and (4) used the mails in furtherance of the scheme." United States v. Bearden, 265 F.3d 732, 736 (8th Cir. 2001). "To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme,' .

. . or 'a step in [the] plot.'" Schmuck v. United States, 489 U.S. 705, 710-11 (1989)(quoting Badders v. United States, 240 U.S. 391, 394 (1916))(internal citation omitted).

Agboola asserts that the mail fraud allegations in Counts 2-3 are defective because the mailings were "immaterial to the actualization of the alleged fraud" and was not done "for the purpose of defrauding lenders as alleged." Agboola describes the mailings at issue in Counts 2 and 3 as having been done by the title company, Lesueur County Abstract, while reconciling its books after Renown Properties had sold the home to the buyer, Olga Garcia. See Petition at 34. The exhibits cited by Agboola reflect that on May 8, 1998, Lesueur County Abstract mailed the check to Ms. Garcia, for endorsement and that Ms. Garcia mailed the check back upon endorsing it. Appendix to Petition at Gov't Exhibit 5.8.1 and Ex. 5.8.4. Such reconciliation of the paperwork related to property sales by the title company after the transaction would have been reasonably foreseeable to Agboola, the owner of a mortgage brokering company, in the execution of his scheme to obtain loan proceeds from lenders based on fraud. So, although the mailings of the $10,600 check occurred after the property purchase, the mailings were incident to an essential part of the scheme, completion of each loan transaction without detection of the fraud involved by the lenders whose funds were the object of Agboola's scheme. See United States v. Boyd, 606 F.2d 792, 794 (8th Cir.

1979)("Conduct is within the mail fraud statute when . . . the use of the mails for the purpose of executing the flow of payoff funds is a reasonably foreseeable possibility in furthering the transaction, especially when the scheme continues and repeats over an extended period of time.").

Further, even assuming that the mailings at issue on Counts 2 and 3 took place after the property transaction to which they related, they were nonetheless well within Agboola's real estate flipping scheme, which took place between from April 1997 until at least March 2001. It was essential to Agboola's scheme that the fraud in each of the real estate transactions that were part of the scheme was not discovered; otherwise, the scheme would have come to an abrupt halt. In this regard, Agboola's mail fraud was akin to that in Schmuck. Schmuck's fraud involved purchasing used cars, rolling back their odometers, then sell the cars to retail dealers at artificially-inflated prices based on the low-mileage readings. Id. at 707. To complete the resale of each automobile, the purchasing dealer was required to submit a title-application for to a state agency on behalf of the retail purchaser. The dealers' submission of the title-application forms supplied the mailing element of each of the alleged mail frauds with which Schmuck was charged. Id. Schmuck argued that mail fraud "cannot be satisfied by a mailing . . . that is routine and innocent in and of itself, and that, far from furthering the execution of the fraud, occurs

after the fraud has come to fruition, [and] is merely tangentially related to the fraud." 489 U.S. at 711. The Supreme Court disagreed concluding that "although the registration-form mailing may not have contributed directly to the duping of either the retail dealers or the customers, they were necessary to the passage of title, which in turn was essential to the perpetuation of Schmuck's scheme." Id. at 712. The same is true of the mailings related to Counts 2 and 3 of the Indictment. Because a mail fraud conviction may be sustained based on a use of the mails that was merely incidental to the scheme, see United States v. Jolivet, 224 F.3d 902, 907 (8th Cir. 2000), there is no defect in Counts 2 and 3 of the indictment.

Agboola also claims that Counts 12-21 are defective because the mailings charged in the Indictment were sent by the bankruptcy court rather than him and were sent in the regular course of a Chapter 7 bankruptcy petition. In the context of proving mail fraud, these factors do not render Counts 12 through 21 defective. "A mailing may be routine or even sent for a legitimate business purpose so long as it assists in carrying out the fraud." United States v. Nelson, 988 F.2d 798, 804 (8th Cir. 1993); see Atlas Pile Driving Co., 886 F.2d 986, 992 (8th Cir. 1989); see, e.g., Carpenter v. United States, 484 U.S. 19, 28 (1987)(mailing newspapers). Further, a defendant need not actually mail something to be guilty of mail fraud; it is sufficient if the defendant

causes the mailing to take place. See United States v. Alanis, 945 F.2d 1032, 1037 (8th Cir. 1991); Pereira v. United States, 347 U.S. 1, 8 (1954). Counts 12 through 21 properly allege that Agboola caused various items to be placed in the United States mail. Again, it was reasonably foreseeable that the bankruptcy court would forward documents evidencing the filing and completion of Agboola's bankruptcy petition to himself, the creditors he listed on his petition, and the bankruptcy trustee. The fact that these mailings were sent by the bankruptcy court after Agboola filed his fraudulent bankruptcy petition and made materially false statements at the creditor's hearing held during the course of his bankruptcy proceedings does not render them defective. Agboola's protestations to the contrary should be rejected.

Of course, the Court need not reach the sufficiency of the government's evidence as to the mail fraud claims, however, because Agboola waived his right to contest the sufficiency of the government's evidence by pleading nolo contendere to Counts 2-3 and 12-21.

Finally, Agboola cannot demonstrate the requisite cause and prejudice to excuse his procedural default because there was no deficiency in the mail fraud counts and, thus, no ineffective assistance by trial counsel in failing to object to them.

6. Failure to File Motion to Dismiss Forfeiture Allegations

Agboola claims that trial counsel was ineffective for failing to move to dismiss the forfeiture allegations in the indictment. According to Agboola, the forfeiture allegations in the indictment are defective because 18 U.S.C. § 982(a) only authorizes forfeiture with respect to mail and wire fraud where the fraud affects a financial institution. Agboola asserts that "there was no fraud affecting a financial institution 'as required for criminal forfeiture of property." Petition at 39. Here, again, Agboola's claim relates to the government's proof rather than the sufficiency of the claim in the indictment. By virtue of his nolo contendere plea, he has waived his right to challenge the sufficiency of the government's evidence on the issue of forfeiture. See United States v. Frederickson, 601 F.2d 1358, 1365 n.10 (8th Cir. 1979)(quoting Lott v. United States, 367 U.S. 421, 426 (1961). Accordingly, his ineffectiveness claim regarding trial counsel's failure to move to dismiss the forfeiture allegations is without merit.

In addition, Agboola has procedurally defaulted his claim of a defect in the forfeiture allegations by failing to raise it on direct appeal. Having failed to do so, Agboola must now demonstrate cause and prejudice to excuse the default. See Bousley v. United States, 523 U.S. 614, 622 (1998). To the extent it is Agboola's claim that his trial counsel's ineffective assistance satisfies the

cause and prejudice requirements, he is mistaken. Trial counsel was not ineffective for failing to challenge the forfeiture allegations in the indictment because there was no deficiency in those allegations. The Superseding Indictment alleged that as a result of the offenses in Counts 1-7 and 11-21, the United States sought to forfeit "any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violations of Title 18, United States Code, Section 1341 or 1343, affecting a financial institution." Superseding Indictment at 27. Agboola contends that the forfeiture allegations were defective because criminal forfeiture is only authorized for mail and wire fraud where the fraud affects a financial institution; however, "[i]n the instant case, there was no fraud affecting a financial institution." Petition at 39. This challenge to the sufficiency of the government's proof has been waived by Agboola through his nolo contendere plea. See United States v. Frederickson, 601 F.2d 1358, 1365 n.10 (8th Cir. 1979)(quoting Lott v. United States, 367 U.S. 421, 426 (1961).

Because Agboola was not required to forfeit anything as part of sentencing, his counsel was not deficient in failing to move to dismiss the forfeiture allegations and he was in no way prejudiced by trial counsel's failure to do so. Therefore, his claim of ineffectiveness concerning the forfeiture allegations fails. Having failed to show that trial counsel was ineffective in failing

to move to dismiss the forfeiture allegations, Agboola cannot demonstrate cause and prejudice to excuse his procedural default in failing to raise this issue on direct appeal. See McNeal v. United States, 248 F.3d 747, 749 (8th Cir. 2001).

7. Failure to Move to Dismiss Money Laundering and Conspiracy Counts in the Indictment

Agboola asserts that trial counsel was ineffective for failing to move for dismissal of the money laundering charges in Counts 22 through 25 on the grounds that the intent to conceal "does not exist as charged in the Indictment." Petition at 42. In support of his argument, Agboola states that "[t]he allegation is not supported by the facts. This is because the petitioner deposited checks payable to himself or his corporation in a bank account which he is the signer on the account, and the account is in his name." Id. Agboola's argument in this regard is yet another attempt by him to challenge the sufficiency of the government's evidence despite his knowing and voluntary nolo contendere pleas to Counts 22 through 25. His challenge is, however, foreclosed by his pleas to these counts. See United States v. Frederickson, 601 F.2d 1358, 1365 n.10 (8th Cir. 1979)(quoting Lott v. United States, 367 U.S. 421, 426 (1961).

Agboola also alleges that the insufficiency of the mail and wire fraud offenses undermine the money laundering and conspiracy charges, which should be dismissed as defective as well. As set forth above, there was no deficiency in the mail fraud counts

challenged for the first time in this petition by Agboola. Additionally, Agboola's assertion that the money laundering and conspiracy charges are dependent upon the mail and wire fraud offenses in the Indictment is misguided. The offenses are separate and require distinct proof. Agboola's claims of defectiveness of the money laundering and conspiracy counts again pertain to the strength of the government's evidence in support of those charges. As discussed above, he may not now challenge the government's proof having relinquished that right by pleading nolo contendere to those counts. See United States v. Frederickson, 601 F.2d 1358, 1365 n.10 (8th Cir. 1979)(quoting Lott v. United States, 367 U.S. 421, 426 (1961).

8. Refusal To Investigate

Agboola claims that trial counsel failed to investigate and interview available witnesses "that would have clearly and definitely helped the defendant's case." Petition at 47. Agboola identifies several people including Wole Akingbsole, David Adegbenro, Ben Taylor, Jr. and Ben Taylor, Sr. who trial counsel should have called as witnesses. Petition at 46-48. It is Agboola's position that it was unreasonable for trial counsel not to interview the loan officers involved in each of the transactions. Id. at 46. According to Agboola, Akingbsole would have testified to Agboola's limited involvement in the sale of the home to Leo Ohaeri, that he (Akingbsole) ordered the appraisal and was free to

choose any appraiser. Id. at 46. Agboola claims that Adegbenro would have testified similarly regarding a different property transaction and indicated that with respect to that transaction: (1) everything was disclosed in accordance with the law and; (2) the second mortgage was agreed to and paid as required. Id. at 47. The Taylors would have provided character testimony. Id. at 48.

In addition, Agboola claims that as a result of his failure to investigate or talk to witnesses and prepare adequately for trial, trial counsel advised him to enter a combination guilty/nolo contendere plea. Agboola further claims that [a]fter knowing he failed to prepare adequately, the only road out for counsel was to push for a last minute plea and used [sic] the power of the bench to coerce defendant to an involuntary plea." Id. at 49. Agboola also asserts that trial counsel promised to call a real estate expert, who would have clarified various misconceptions regarding real estate flipping, but failed to do so. Id. at 48.

Agboola makes numerous conclusory claims about trial counsel's failure to investigate and interview witnesses but fails to provide specifics about surrounding the circumstances of trial counsel's alleged failure to investigate and interview witnesses. However, conclusory allegations of ineffective assistance of counsel are inadequate to demonstrate deficient performance or prejudice. Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).

Further, although trial counsel did not call the witnesses identified by Agboola, he did address the issues that Agboola indicated the specified witnesses would have clarified. Trial counsel cross-examined Yulanda Mitchell and Leo Ohaeri about the circumstances surrounding the purchase of their homes from companies owned or controlled by Agboola, the existence of second mortgages in connection with their purchase and any discussions regarding repaying the second mortgages, the existence of appraisals pertaining to their properties and increases in value of the properties, and Agboola's "assistance" in helping them to purchase homes. (See Evidentiary Hearing Tr. at 110-118, 555-584.) Trial counsel also elicited testimony from Kim Smith, a former Agboola employee regarding the inherent legality of real estate flipping absent any fraud. (Id. at 42-43.) Trial counsel also raised the issue of differences between the purchase price of properties and their market value. (Id. at 358-60.) Thus, the evidence that Agboola contends trial counsel should have developed would have been cumulative to what was in fact addressed in trial counsel's cross-examination of the government's witnesses and his examination of Agboola himself. Importantly, Agboola fails to demonstrate how the testimony of those witnesses after he had entered guilty and nolo contendere pleas would have aided his defense. Because Agboola has failed to demonstrate that trial counsel's failure to call the witnesses identified in his petition

"would likely have affected the result, [i.e., that he would have proceeded to trial rather than entered guilty and nolo contendere pleas] he has failed to prove either that trial counsel's assistance was ineffective . . . or prejudice." Delgado, 162 F.3d at 983 (citations omitted).

9. Plea Discussions

Agboola argues that trial counsel was ineffective for inviting and condoning the participation of the Court in plea discussions in January 2003. Agboola also asserts that he was coerced into entering his guilty and nolo contendere pleas. Petition at 51. He further alleges that he would have proceeded to trial if "the judge had not played an advocacy role in the plea discussion." Id. He also claims that the judge commented on the weight of the evidence against him and promised him a downward departure. Id. According to Agboola, "[t]he resolution of this case is full of fears, intimidation and mental coercion from the court and defense counsel." Id. at 52. He claims that "[h]ad the judge not participated in the plea Discussion, petitioners would have proceeded to trial." Id. Agboola's assertions are belied by the record.

First, the Court did not participate in plea discussions. In January 2003, there were no plea discussions between Agboola and the United States because Agboola's prior guilty plea had been vacated by the Court. (See Order dated November 15, 2002.) The

discussions that Agboola claims involved the Court participating in plea discussions took place on the second day of trial, January 22, 2003, and related to the Court's consideration of Agboola's request to enter nolo contendere pleas to the majority of the charges against him rather than proceed with trial. (See Guilty Plea Tr. at 2.) Rule 11 provides that "[b]efore accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice." Fed.R.Crim.P. 11(a)(3). In initiating the discussions about which Agboola complains, the Court stated that it was required to consider the parties' views and the public's interest in the efficient administration of justice before it could accept a nolo contendere plea. (Guilty Plea Tr. at 2.) During the conversations that ensued between the Court, defense counsel and the United States, the Court sought to understand and clarify for the parties' the import of its acceptance of the proffered guilty and nolo contendere pleas in order to advise Agboola appropriately pursuant to Rule 11. (Id. at 19-21.)

Second, at no point during the discussions regarding the import of Agboola's proffered pleas did the Court assume an advocacy role as alleged by Agboola. Nor did the Court comment on the weight of the evidence in response to being accused of

participating in plea discussions.[6] Finally, Agboola's claims that the Court promised him a downward departure and "violated Federal Rule of Criminal Procedure 11" are false and baseless.

Third, Agboola's claim that he was coerced, intimidated and pressured into entering his pleas is contradicted by his statements at the time he entered his guilty and nolo contendere pleas. "'While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)(citations omitted). When asked by the Court whether he was forced or coerced to enter his guilty and nolo contendere pleas, Agboola answered in the negative. (Guilty Plea Tr. at 40.) Similarly, Agboola responded "No" when asked if any guarantees were made about his possible sentence. (Id. at 37.) He also responded negatively when asked if anyone made promises to him to get him to plead guilty. (Id. at 40.) In addition, when informed that he was facing up to 30 years of imprisonment on the

[6] The only reference by the Court to the weight of the evidence was the Court's statement in expressing its intent to accept Agboola's nolo contendere pleas that the pleas would "in no way reduce the impact or the weight of the evidence that the government has amassed against him." (Guilty Plea Tr. at 31.)

mail and wire fraud charges and asked if that fact changed his mind about entering his pleas, Agboola stated that it did not. (Id. at 55.)

Finally, Agboola's claim that he would have proceeded to trial had the Court not participated in plea discussions is belied by the record because the supposed plea discussions of which he complains took place after he had indicated his desire to enter guilty and nolo contendere pleas. Agboola had already made his decision to resolve the case without a trial prior to the discussions between the parties about the import of the pleas. Agboola's assertions of coercion on the part of trial counsel and the Court and violations of Rule 11 on the part of the Court are contradicted by the record and should be dismissed.

10. Failure to Preserve Apprendi and Booker Rights

Though styled as a failure to preserve Apprendi rights, Agboola claims that trial counsel was ineffective in failing to preserve his Sixth Amendment "right to jury determination of enhancing facts" and the mandatory nature of the Sentencing Guidelines. See Petition at 57.[7] This aspect of Agboola's ineffective assistance claim also fails.

[7] Were Agboola's claim in fact directed toward trial counsel's failure to preserve his Apprendi rights, the claim would fail for lack of deficient performance and prejudice because there would have been no basis for an Apprendi objection at sentencing as Agboola was sentenced below the statutory maximum sentences on the counts of conviction.

On appeal, Agboola claimed that the district court committed error by increasing his base offense level based on evidence not charged in the indictment, determined by a jury or admitted by him. 417 F.3d at 866. The Eighth Circuit concluded that Agboola failed to demonstrate plain error because he could not show "a reasonable probability the district court would have imposed a more lenient sentence under an advisory Guidelines system." Id. at 867.

Agboola asserts that trial counsel was ineffective for failing to preserve his Sixth Amendment right to a jury determination of enhancing facts under the Sentencing Guidelines and for failing to object to the then-mandatory Sentencing Guidelines. Petition at 57. First, there was no indication at the time of Agboola's sentencing that an objection on these grounds was supportable under the then-existing law. Counsel is not deficient for "failing to predict future developments in the law." Wajda v. United States, 64 F.3d 385, 388 (8th Cir. 1995). Second, even if Agboola's allegation were to meet the first prong of Strickland, his ineffectiveness claim would still fail for failure to demonstrate prejudice. Had trial counsel preserved Agboola's Sixth Amendment claim at sentencing, his appeal would have been considered under a more favorable standard of review, i.e., harmless error, and his case may have been remanded for resentencing in accordance with Booker. However, trial counsel's failure to preserve the Sixth Amendment claim does not rise to the level of ineffectiveness

because Agboola cannot demonstrate prejudice, i.e., that he would have received a more favorable sentence on remand – the very factor that undermined his Booker claim on direct appeal. See 417 F.3d at 867; United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005)(en banc). Accordingly, Agboola's contention that trial counsel was ineffective for failing to preserve his Booker claim is without merit.

11. Failure to Object to Reopening of Restitution Issue

Agboola contends that trial counsel's failure to object to the Court's alleged re-opening of the issue of restitution in May, 2004 after his December 19, 2003 sentencing constituted ineffective assistance. Petition at 61. According to Agboola, the Court did not have jurisdiction to modify his sentence to include additional restitution to victims of his fraud when more than 90 days after he was sentenced. Id. at 63. He also claims that the Court was without jurisdiction to amend the restitution award because his appeal of his conviction and sentence divested the Court of jurisdiction to alter its Judgment in the case. Id. at 64. Finally, Agboola contends that the Court's restitution award of $563,000 exceeded the statutory limit set forth in 18 U.S.C. § 3663. Agboola's objection to the Court's award of restitution concerns its voiding of his interests in properties he sold to buyers at fraudulently-inflated prices on June 14, 2004. Agboola's ineffective assistance claim again fails.

Agboola's ineffective assistance claim as to this issue is another improper attempt to relitigate an issue that he raise and lost on appeal. On appeal, Agboola argued that the district court erred in requiring him to execute "satisfactions on fraudulently obtained second mortgages on four properties." 417 F.3d 860 at 870. He also alleged that the Court "erred by voiding the mortgages after he failed to execute the satisfactions." Id. The Eighth Circuit concluded that the Court "did not err in voiding Agboola's interest in the fraudulently obtained second mortgages" because the "second mortgages were obtained by fraud, and should be cancelled to restore the fraud victims, as much as possible to their pre-fraud position." Id. Having challenged this aspect of the Court's sentence on appeal and lost, Agboola may not now relitigate the issue under the guise of an ineffective assistance claim. See United States v. Dall, 957 F.2d 571, 572 (8th Cir. 1992)("[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.")(quoting United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981)(per curiam).

12. Duplication of Restitution Payments, Conflict of Interest and Double Jeopardy Violations

Agboola makes the conclusory claim that trial counsel had a conflict of interest in his representation of the defendant, that the computation of the restitution was duplicative and that there was a violation of the double jeopardy clause in this case.

Petition at 66-68. However, conclusory claims of ineffective assistance do no suffice to prove either deficient performance or prejudice resulting therefrom. Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). As a result of his failure to demonstrate ineffective assistance as to any of these allegations, all three of these unsubstantiated claims should be rejected.

### B. Ineffective Assistance of Appellate Counsel

Agboola's petition sets forth various claims of ineffectiveness as to his appellate counsel as well. Petition at 69-75. Agboola asserts that appellate counsel was ineffective in failing to (1) challenge whether the district court had jurisdiction to re-open the restitution issue after sentencing; (2) challenge the computation of the restitution; (3) review the transcript of the plea hearing in preparation of his direct appeal; and (4) assert a double jeopardy challenge to the computation of the laundered funds. Petition at 69-74.

#### 1. Failure to Challenge Re-opening of Restitution and Computation of Restitution

Agboola makes the conclusory allegation that appellate counsel, along with trial counsel, was ineffective in failing to challenge the district court's re-opening of restitution. Petition at 61-65. This claim fails as to appellate counsel for the same reason that it failed as to trial counsel and should be dismissed. See, supra, Section II.A.11.

Agboola also claims that appellate counsel was ineffective for failing to challenge the Court's computation of restitution. Petition at 68. However, Agboola's assertion that appellate counsel failed to raise this issue contradicts the record on appeal. It appears that the restitution issue to which Agboola refers, see Petition at 69, is the fraudulently-obtained second mortgages that were voided by the Court. Rather than failing to raise this issue, appellate counsel filed a separate appeal on precisely this issue, which was decided adversely to Agboola. See 417 F.3d 860, 870 (8th Cir. 2005). Accordingly, any claim of ineffective assistance for failing to raise that issue is without merit.

2. Appellate Counsel's Failure to Secure a Transcript of the Change of Plea Hearing

Agboola also claims in summary fashion that appellate counsel was ineffective for failing to obtain a copy of the plea transcript on the grounds that the "[t]he core of the appeal was to be able to revert the plea." Petition at 69. According to Agboola, "[i]f a lawyer intended to challenge a contract, it would make sense if he would have a copy of the contract for review." Id. Agboola suggests that appellate counsel should have reviewed the plea transcript to ensure that his change of plea comported with Rule 11. Id.

"A criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal, as well as at trial." Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003)(citation omitted). However, "[c]ounsel is not required to raise every potential issue on appeal." Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005). "The selection and 'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy.'). Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996)(holding that counsel was not ineffective for failing to raise an issue on appeal). If his claim is true, Agboola does not indicate how he was prejudiced by appellate counsel's failure to obtain a copy of the plea transcript other than his statement that the "core of the appeal was to be able to revert the plea." However, he offers no additional information about whether this issue was ever discussed between him and appellate counsel.

Here, Agboola's assertion of ineffective assistance is simply second-guessing appellate counsel's strategy on appeal. To prevail on an ineffective assistance challenge, given the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," Agboola "'must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [appellate] strategy.'" Strickland, 466 U.S. at 668; see Anderson, 393 F.3d at 754; Lingar v. Bowersox, 176 F.3d 453, 459 (8th Cir. 1999)(quoting Strickland). Reasonable

strategic decisions are "virtually unchallengeable." Strickland, 466 U.S. at 690. Agboola has failed to overcome the presumption that appellate counsel's failure to review the plea transcript was not sound appellate strategy given the myriad issues that could have been pursued on appeal. He has also failed to demonstrate prejudice as a result of appellate counsel's alleged deficient performance. His ineffective assistance claim, therefore, fails.

3. Computation of Laundered Funds, Multiplicity and Double Jeopardy

Agboola claims that appellate counsel was also ineffective for failing to challenge the Court's computation of the laundered funds and the double jeopardy violation caused by the Court's computation. Petition at 71-73. He also objects to multiplicity in the Superseding Indictment. Id. at 73-74. Agboola's argument about the computation of the laundered funds and double jeopardy is a rehash of his objection to the Court's grouping of the promotion and concealment money laundering counts on appeal. The Eighth Circuit concluded that "the district court properly grouped the counts and correctly set the base offense level at 23." 417 F.3d 860, 866 (8th Cir. 2005). Agboola may not attempt to relitigate this issue which he raised and lost on direct appeal from a different vantage point in his petition. See United States v. Dall, 957 F.2d 571, 572 (8th Cir. 1992)("[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.")(quoting United States v.

Shabazz, 657 F.2d 189, 190 (8th Cir. 1981)(per curiam). Further, Agboola wholly fails to articulate the manner in which the Superseding Indictment is multiplicitous. See Petition at 73-74. Given the conclusory nature of the allegation, no ineffective assistance claim on this basis can be sustained. Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).

C. Innocence

Agboola once again, as he has on several occasions during the pendency of his case, asserts his innocence of the conspiracy and real estate flipping charges. See Petition at 75-93; Evidentiary Hearing Tr. at 355, 357; Sent. Tr. 3-8, 37-39. However, he presents no new proof evidencing innocence. After extensive hearings on the issue of whether Agboola committed any crimes, the extent of those crimes and whether anyone was victimized by his crimes, this Court concluded that Agboola was guilty of all of the offenses charged against him in the Superseding Indictment. See Sent. Tr. at 8. The Eighth Circuit affirmed his conviction and sentence. 417 F.3d 860 (8th Cir. 2005). His protestations of innocence are baseless.

## III. <u>Conclusion</u>

For all the foregoing reasons, Agboola's claims of ineffective assistance fail. His petition should, therefore, be dismissed without a hearing.

Dated: July 26, 2006

Respectfully submitted,

RACHEL K. PAULOSE
United States Attorney

s/Michelle E. Jones

BY: MICHELLE E. JONES
Assistant U.S. Attorney