**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

OLUSOJI MICHAEL AGBOOLA,

Defendant.

Criminal No. 01-162 (JRT/FLN)
Civil No. 06-640 (JRT)

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION**

---

Michelle E. Jones, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 for plaintiff.

Olusoji Michael Agboola, #24468-018, Federal Correctional Institution-Allenwood, P.O. Box 1000, White Dear, PA 17887, defendant *pro se*.

Defendant Olusoji Michael Agboola ("Agboola"), a federal prisoner incarcerated at the Federal Correctional Institution in White Dear, Pennsylvania, brings this motion to vacate pursuant to 28 U.S.C. § 2255.[1] As explained below, the Court denies the motion.

## BACKGROUND

Agboola, a Nigerian citizen, owned a mortgage brokerage company called Mortgage Advancement Corporation ("MAC"), and two other companies called AG Properties ("AG") and AGM Investment Corporation ("AGM"). MAC provided

---

[1] Agboola has also filed an application seeking leave to proceed in forma pauperis ("IFP"). *See* Docket No. 261. However, since the petition is construed to be a § 2255 motion, no filing fee is required for this case and his IFP application is moot. *See Sheldon v. Hollingsworth*, 2005 WL 846220, at *2 (D. Minn. Apr. 4, 2005).

mortgage brokering and other real estate services. From 1997 to 2001, Agboola and his brother-in-law, Michael Aihe ("Aihe"), were involved in a property "flipping" scheme where certain property values were inflated through fraudulent appraisals provided by Aihe's company, Lakeland Appraisals. Agboola purchased properties through AG and AGM, then resold them to MAC clients, in order to inflate the apparent value of the properties and generate fraudulently obtained proceeds. The transactions MAC brokered used false seller carry-back promissory notes, fraudulent down payments, and other false documents and devices. These practices permitted MAC, AG, and AGM to obtain loan proceeds exceeding the actual market value of the real estate.

AG and AGM would hold title to real estate for as little as one day before selling to a MAC client for substantially higher prices, based on the fraudulent appraisals. Agboola encouraged MAC employees to set up their own companies to purchase and sell real estate, as well as use "seller carry-back" loans to pay off a client's down payment to help the client qualify for a mortgage. Agboola provided the funds for these transactions. The normal practice at MAC was to forgive the carry-back loans so clients would not have to repay them, but institutional lenders were not informed of the practice. Agboola also directed MAC employees to submit fraudulent loan documents, deposit verifications, employment records, income records, and tax returns to mislead lenders into funding transactions MAC brokered.

In 1998, Agboola filed for bankruptcy. He concealed assets, income, property, and ownership in his businesses from the bankruptcy court by using an alias and a second social security number, and by attributing ownership of assets to a nonexistent brother.

Agboola claimed assets of $4,885 and liabilities totaling $236,948. The bankruptcy court discharged Agboola's debts.

On January 19, 2000, Agboola was charged with bankruptcy fraud, mail fraud, and money laundering, and an arrest warrant issued. Agboola left Minnesota and went to Texas after the arrest warrant issued. Agboola claimed he did not know about the arrest warrant but, after leaving Minnesota, he obtained a driver's license in Texas under the name Michael Aina. Agboola used the Texas license to obtain a Minnesota identification card using the name Michael Aina. Agboola then used the Minnesota identification card and an employee's, Kola Aina's, social security number to obtain a Florida driver's license under the name Michael Aina. Agboola used the Florida license to open a bank account to deposit a check he obtained in Minnesota. Agboola also possessed two Minnesota driver's licenses, one in his own name and the other in the name of Michael Olusoji Agboola.

In February 2001, Agboola returned to Minnesota. Agboola spoke to a former client, who informed Agboola that law enforcement had questioned a lot of people who purchased homes from Agboola.

On March 14, 2001, Aihe told federal agents in Florida he saw Agboola in February or March 2001. On March 20, federal agents surveilled a title insurance company's office in Lake Mary, Florida. Aihe and Agboola arrived at the business. Aihe entered the business and asked for "Michael." Agboola entered the business minutes later and stated he had an appointment. After agents confirmed Agboola was the person

wanted under their arrest warrant, they arrested him. Upon arrest, Agboola told IRS Special Agent Kathy Klug ("Agent Klug") he was tired of running and being a fugitive.

On January 15, 2002, the government filed a forty-four count superceding indictment against Agboola and Aihe. Agboola was charged in forty-three counts as follows: conspiracy to commit mail fraud (Count 1); mail fraud (Counts 2 through 3 and 12 through 21); wire fraud (Counts 4 through 7); money laundering with intent to promote aiding and abetting (Counts 8 and 9); transactions in criminally derived property (Counts 10 and 26 through 40); bankruptcy fraud (Count 11); money laundering with intent to conceal aiding and abetting (Counts 22 through 25); perjury (Count 41); using a fraudulently procured social security number (Count 42); and fraudulent concealment (Count 43).

On May 1, 2002, Agboola pled guilty to four counts in the superceding indictment. The Court later granted Agboola's motion to withdraw the guilty plea. On January 22, 2003, Agboola pled guilty to Count 11, bankruptcy fraud in violation of 18 U.S.C. § 152(1); Count 41, perjury in violation of 18 U.S.C. § 1621; and Count 43, fraudulent concealment in violation of 18 U.S.C. § 1001(a)(1). Agboola pled nolo contendere to Counts 1 through 10, 12 through 40, and 42. At his change-of-plea hearing, Agboola admitted he concealed assets in his bankruptcy petition, failed to provide accurate information, failed to disclose his interest in his companies, lied to the bankruptcy court, and defrauded the Social Security Administration. Before the plea was entered, the Court and the prosecution expressed reservations about letting jurors leave the courthouse, due to Agboola's prior withdrawal of his guilty plea. The prosecution opposed permitting

Agboola to plead nolo contendere to any counts, stating it was prepared to go to trial and prove all the charges in the indictment. The prosecution opined "it [was] not in the public interest of the effective administration of justice to allow the defendant to plead nolo contendere, thereby necessitating a contested evidentiary hearing down the line with respect to all of these matters that are before the Court and could be resolved by a jury at this point." The Court accepted Agboola's pleas.

The Court held sentencing evidentiary hearings (evidentiary hearings) in July and August 2003. On December 13, 2003, Agboola again moved to withdraw his guilty plea. The Court denied his motion, noting the prosecution's position at the change-of-plea hearing eleven months earlier that the prosecution had been prepared to go to trial against Agboola at that time. The Court found the loss to others from Agboola's property flipping scheme and bankruptcy fraud totaled $738,498, requiring a ten-level enhancement. The Court also assessed a two-level obstruction of justice enhancement. The Court grouped the money laundering counts together and assessed a base offense level of 23 for those offenses. The Court sentenced Agboola to 60 months on Counts 1, 11, and 41 through 43, and 108 months on Counts 2 through 10 and 12 through 40, with the sentences to run concurrently. Finding "no reason to sentence [Agboola] to anything more than the bottom of the applicable guideline range," the Court stated "the sentence at the bottom of the applicable guideline range is sufficient to . . . adequately cover any issues." Finally, the Court ordered Agboola to pay mandatory restitution of $582,679.45, including $563,785 to victims of the real estate scheme and $18,894.45 to creditors related to the bankruptcy fraud.

Through his counsel, Agboola filed a Notice of Appeal on December 29, 2003. On December 30, 2003, Agboola filed a pro se motion for a new trial. Agboola's motion for new trial was denied on March 22, 2004.

On March 29, 2004, Agboola filed a motion to substitute counsel, which was granted the following day. At that point, Agboola's appellate counsel, David Chapman, began to represent him in conjunction with his "trial counsel" Gary Bryant-Wolf. Agboola had previously moved pro se to dismiss Bryant-Wolf on April 24, 2003, but withdrew the motion on May 5, 2003. On May 17, 2004, Agboola filed another motion to remove Bryant-Wolf as his counsel. The Court granted Agboola's motion to remove Bryant-Wolf on July 13, 2004.

On August 8, 2005, the Eighth Circuit affirmed Agboola's conviction and sentence. *United States v. Agboola*, 417 F.3d 860 (8th Cir. 2005). Agboola now seeks collateral review through a § 2255 motion, claiming that he received ineffective assistance of counsel.

## ANALYSIS

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Garrett v. United States*, 78

F.3d 1296, 1301 (8th Cir. 1996). Under *Strickland*, there is a presumption that the attorney's representation was competent and that the challenged decisions constituted permissible strategic and tactical choices of counsel. *Strickland*, 466 U.S. at 689. In the context of a guilty plea, the defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Agboola raises several grounds in support of his claim that both his trial counsel and his appellate counsel provided ineffective assistance of counsel. The Court addresses each of the grounds below.

## A. Ineffective Assistance of Trial Counsel

### 1. Testimony of Agent Klug

Agboola asserts that his counsel was ineffective for failing to object to the testimony of Agent Klug at the evidentiary hearing. Agboola argues that his counsel should have objected to Agent Klug's testimony because it was unqualified expert testimony. Agboola also raised this argument on direct appeal, asserting that the district court abused its discretion in admitting Agent Klug's testimony because it was unqualified expert testimony. The Eighth Circuit disagreed, concluding "Agent Klug did not testify to matters reserved for expert testimony," and held that "the district court committed no error, let alone plain error in admitting her testimony." *Agboola*, 417 F.3d at 865.

Agboola cannot relitigate in his § 2255 petition an issue that was raised and decided against him on direct appeal. *See United States v. Dall*, 957 F.2d 571, 572 (8th Cir. 1992). Further, in view of the Eighth Circuit's determination that Agent Klug did not offer expert testimony and this Court committed no error in admitting Agent Klug's testimony, Agboola cannot prevail on his claim that his counsel's failure to object to Agent Klug's testimony constituted ineffective assistance. "The performance of an attorney is not deficient because the attorney failed to object to admissible evidence." *Garrett*, 78 F.3d at 1302. Accordingly, the Court denies Agboola's § 2255 motion on this ground.

### 2. Application of the Obstruction of Justice Enhancement

Agboola contends that his trial counsel's failure to object appropriately to the application of the obstruction of justice enhancement constituted ineffective assistance of counsel. At sentencing, this Court applied a two-level enhancement for obstruction of justice pursuant to § 3C1.1(A) of the United States Sentencing Guidelines. Agboola challenged this sentencing enhancement on his direct appeal, and the Eighth Circuit determined that the enhancement was proper based on Agboola's flight from the district and attempts to avoid arrest after he learned he was under investigation. *Agboola*, 417 F.3d at 867-68.

Here, Agboola is essentially attempting to relitigate this issue in his § 2255 petition by arguing that defense counsel was ineffective for failing to argue this issue appropriately. Indeed, his only basis for asserting that his counsel was "ineffective"

appears to be the fact that both this Court and the Eighth Circuit disagreed with his counsel's argument. As set forth above, Agboola may not relitigate in a § 2255 motion an issue that was raised and decided on appeal. *See Dall*, 957 F.2d at 572; *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981). Moreover, counsel is not "ineffective" in making an argument simply because the argument was rejected by the court. *See Graham v. Dormire*, 212 F.3d 437, 441 (8th Cir. 2000). Accordingly, the Court denies Agboola's petition on this ground.

**3. Amount of Loss**

Agboola claims that trial counsel was ineffective in the manner in which he argued the issue of loss and restitution to the sentencing court. Agboola has twice disputed the amount of loss and the computation of the amount of loss, both through his trial counsel in evidentiary hearings before this Court, and again on direct appeal. On appeal, the Eighth Circuit rejected Agboola's claim that the amount of loss should have been significantly less than the amount calculated by this Court, and held that, in light of the difficulty involved in quantifying the victims' losses from Agboola's real estate flipping scheme, this Court did not err in using Agboola's pecuniary gain from a subset of flipping transactions undertaken in the case to arrive at the amount of loss attributable to Agboola. *Agboola*, 417 F.3d at 870.

Here, Agboola again argues that the amount of loss should have been greatly reduced by the Court. Although he has styled this ground for relief as an ineffective assistance of counsel claim, it appears his counsel was "ineffective" only in that the Court

did not agree with counsel's arguments. *See Dall*, 957 F.2d at 572; *Shabazz*, 657 F.2d at 190. As set forth above, Agboola may not relitigate in a § 2255 motion an issue that was raised and decided on appeal, and counsel is not "ineffective" simply because counsel lost. *See Dall*, 957 F.2d at 572; *Shabazz*, 657 F.2d at 190; *Graham v. Dormire*, 212 F.3d 437, 441 (8th Cir. 2000). Accordingly, the Court denies Agboola's petition on this ground.

### 4. Severance

Agboola claims that trial counsel was ineffective for failing to move to sever the bankruptcy fraud counts from the real estate charges in the superseding indictment. Under Federal Rule of Criminal Procedure 8, two or more offenses may be charged in the same indictment so long as the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a); *United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999).

The real estate counts of the superseding indictment charged Agboola with engaging in a conspiracy to commit mail and wire fraud from April 1997 through March 2001 by using companies he owned to facilitate fraudulent real estate transactions. The real estate counts included mail and wire fraud and money laundering charges. The superseding indictment alleged that one of Agboola's companies, MAC, served as the mortgage broker in most of the fraudulent real estate transactions. The indictment further

alleged that Agboola used two of his other companies, AG and AGM, to purchase properties then resell them at fraudulently-inflated prices to MAC customers.

Count 11 charged Agboola with committing bankruptcy fraud by failing to disclose property and other assets belonging to his estate, including his interest in and control of MAC, AGM and AG, as part of his bankruptcy petition. Count 41, which Agboola appears to consider part of the bankruptcy fraud counts, charged Agboola with perjuring himself at the creditor's meeting held as part of the bankruptcy proceeding in May 1998 when he stated that he had no ownership interest in MAC. Count 43, which Agboola also appears to refer to as part of the bankruptcy fraud counts, charged Agboola with fraudulently concealing from the Social Security Administration on his 2000 application for a Social Security Card that he had already been issued a Social Security number and card in another name. Agboola's bankruptcy petition was filed using the other name, "Soji Agboola" and the social security number issued to him under that name. Agboola also used the Soji Agboola identity in many of the fraudulent real estate transactions.

As a result of Agboola's use of a fraudulent identity to perpetrate the real estate fraud, hide the assets derived from that fraud and engage in bankruptcy fraud, the proof for the real estate flipping fraud and bankruptcy fraud was overlapping and intertwined. The evidence as to Agboola's real estate flipping transactions and bankruptcy offenses were part of a common scheme or plan. Accordingly, the offenses were properly joined. *See United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996).

Once properly joined, a court may order separate trials of counts if the joinder of offenses in an indictment appears to prejudice a defendant or the government. Fed. R. Crim. P. 14. "Prejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately." *Davis*, 103 F.3d at 676. However, "a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." *Id.* There is a strong presumption against severing properly joined cases. *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). Moreover, "the possibility that a defendant's chances for acquittal may be better in separate trials is an insufficient justification for severance." *Id.* at 887

Because evidence of Agboola's bankruptcy and concealment offenses would have been probative and admissible in a trial on the real estate flipping fraud scheme, and vice versa, to prove, inter alia, motive, intent, plan, knowledge, identity and absence of mistake, even if trial counsel had moved to sever, Agboola would not have been able to show undue prejudice resulting from the joinder of the offenses. *See United States v. Brooks*, 174 F.3d 950, 957-58 (8th Cir. 1999). Since Agboola would have been unable to prove undue prejudice under Rule 14, any motion to sever on that basis would have been meritless. Counsel is not ineffective for failing to make a motion that would have been meritless. *See Dyer*, 23 F.3d at 1426. Therefore, Agboola's counsel was not ineffective for failing to move for severance, and accordingly, Agboola is not entitled to relief on this ground.

### 5. Motion to Dismiss Mail Fraud Counts

Agboola asserts that trial counsel was ineffective for failing to move to dismiss the mail fraud allegations in Counts 2 and 3, and Counts 12-21, arguing that, but for counsel's failure to move to dismiss these counts, he would not have pleaded guilty and would have gone to trial.

Counts 2 and 3 of the superseding indictment charge Agboola and Aihe with causing a $10,600 check to be sent through the United States mail as part of the scheme to defraud on May 8 and 9, 1998. Counts 12-21 charge Agboola with mail fraud related to his fraudulent bankruptcy petition.

A mail fraud conviction requires proof a defendant "(1) voluntarily and intentionally devised or participated in a scheme to defraud, (2) entered into the scheme with the intent to defraud, (3) knew it was reasonably foreseeable that the mails would be used, and (4) used the mails in furtherance of the scheme." *United States v. Bearden*, 265 F.3d 732, 736 (8th Cir. 2001). A mail fraud conviction may be sustained based on a use of the mails that was merely incidental to the scheme. *See United States v. Jolivet*, 224 F.3d 902, 907 (8th Cir. 2000).

Agboola asserts that a motion to dismiss Counts 2 and 3 would have been successful, because the mailings containing the check were "immaterial" to the fraud. However, as set forth above, the offense of mail fraud does not require that the mailing at issue be "material" to the fraud. Rather, it is sufficient if the use of mail was reasonably foreseeable to the defendant, and "incidental" to the fraud. *See Bearden*, 265 F.3d at 736;

*Jolivet*, 224 F.3d at 907. Here, the mailings at issue would have been reasonably foreseeable to Agboola, and the use of the mails was, at the very least, incidental to the scheme. Therefore, even if counsel had moved to dismiss Counts 2 and 3 of the superseding indictment on the grounds that the mailings at issue were "immaterial" to the fraud, there is no reasonable probability that the motion would have succeeded. Because there is no reasonable probability that the motion would have been successful, Agboola cannot show that he was prejudiced by his counsel's allegedly ineffective assistance. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Accordingly, the Court denies Agboola's ineffective assistance of counsel claim on this ground.

Agboola claims that Counts 12-21 are defective because the mailings charged in the indictment were sent by the bankruptcy court rather than him and were sent in the regular course of a bankruptcy petition. However, a defendant need not actually mail something to be guilty of mail fraud. *See United States v. Alanis*, 945 F.2d 1032, 1037 (8th Cir. 1991). Rather, it is sufficient if the defendant causes the mailing to take place. *Id.*

Here, Counts 12 through 21 allege that Agboola caused various items to be placed in the United States mail. It was reasonably foreseeable that the bankruptcy court would forward documents evidencing the filing and completion of Agboola's bankruptcy petition to himself, the creditors he listed on his petition, and the bankruptcy trustee. The fact that these mailings were sent by the bankruptcy court after Agboola filed his fraudulent bankruptcy petition does not render Counts 12 through 21 defective. As with his ineffective assistance claim regarding Counts 2 and 3, Agboola has not shown any

reasonable possibility that a motion to dismiss Counts 12-21 would have been successful, and therefore, Agboola cannot show that he was prejudiced by his counsel's failure to make such a motion. Accordingly, the Court denies Agboola's motion on this ground.

### 6. Motion to Dismiss Forfeiture Allegations

Agboola claims that trial counsel was ineffective for failing to move to dismiss the forfeiture allegations in the indictment. The superseding indictment alleged that as a result of the offenses in Counts 1-7 and 11-21, the United States sought to forfeit "any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violations of Title 18, United States Code, Section 1341 or 1343, affecting a financial institution." Agboola contends that the forfeiture allegations were defective, and that his counsel should have moved to dismiss them, because criminal forfeiture is only authorized for mail and wire fraud where the fraud affects a financial institution, and that in his case, "there was no fraud affecting a financial institution."

Agboola was not, however, required to forfeit anything as part of sentencing. Thus, even if his counsel erred in failing to move to dismiss the forfeiture allegations, Agboola suffered no prejudice as a result. Accordingly, the Court denies Agboola's ineffective assistance of counsel claim on this ground.

**7. Motion to Dismiss Money Laundering and Conspiracy Counts**

Agboola asserts that trial counsel was ineffective for failing to move for dismissal of the money laundering charges in Counts 22 through 25, arguing that he did not act with the requisite level of intent.

Although Agboola styles this ground for relief as an ineffective assistance of counsel claim based on his counsel's failure to move to dismiss the money laundering charges, he does not dispute that the indictment set forth allegations satisfying every element of the offense of money laundering. Nor does he contend that his counsel misinformed or misrepresented the elements of the offense to him, or that his counsel failed to investigate the money laundering charges, or that his counsel coerced or pressured him into entering into a plea with respect to these charges. Finally, Agboola does not offer any facts showing that he lacked the requisite level of intent to which he pled. Rather, he relies on his conclusory statement in the petition that he is innocent of the charges.

As set forth above, there is a presumption that an attorney's representation was competent and that the challenged decisions constituted permissible strategic and tactical choices of counsel. *Strickland*, 466 U.S. at 689. To succeed on his ineffective assistance of counsel claim, Agboola must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Strickland*, 466 U.S. at 688, 694; *Hill*, 474 U.S. at 59. The Court finds that Agboola failed this burden. Agboola offers no reason or explanation showing that, if his

counsel had done anything differently, Agboola would not have pleaded nolo contendere to the money laundering charges and would have insisted on going to trial. Accordingly, relief is not warranted on this ground.

### 8. Refusal To Investigate

Agboola claims that trial counsel failed to investigate and interview available witnesses who would have helped his case, and identifies several people, including Wole Akingbsole, David Adegbenro, Ben Taylor, Jr. and Ben Taylor, Sr., who he claims trial counsel should have called as witnesses. According to Agboola, Akingbsole would have testified to Agboola's limited involvement in the sale of the home to Leo Ohaeri, and that Akingbsole ordered the appraisal and was free to choose any appraiser. Agboola claims that Adegbenro would have testified similarly regarding a different property transaction and indicated that everything was disclosed in accordance with the law and that the second mortgage was agreed to and paid as required. Agboola also claims that the Taylors would have provided character testimony. Agboola also asserts that trial counsel promised to call a real estate expert, who would have clarified various misconceptions regarding real estate flipping, but failed to do so. Agboola asserts that as a result of his counsel's failure to investigate or talk to witnesses and prepare adequately for trial, trial counsel advised him to enter a combination guilty and nolo contendere plea, and that his counsel's failure to investigate left him no choice but to enter into a plea agreement.

Although trial counsel did not call the witnesses identified by Agboola in the petition, trial counsel did address the issues raised by Agboola here. For example, trial

counsel cross-examined Yulanda Mitchell and Leo Ohaeri about the circumstances surrounding the purchase of their homes from companies owned or controlled by Agboola, the existence of second mortgages in connection with their purchase and any discussions regarding repaying the second mortgages, the existence of appraisals pertaining to their properties and increases in value of the properties, and Agboola's assistance in helping them to purchase homes. Trial counsel also elicited testimony from Kim Smith, a former Agboola employee regarding the inherent legality of real estate flipping absent any fraud. Trial counsel also raised the issue of differences between the purchase price of properties and their market value. Thus, the evidence that Agboola contends trial counsel should have developed would have been cumulative to what was in fact addressed in trial counsel's cross-examination of the prosecution's witnesses and his examination of Agboola himself.

As set forth above, to succeed on his ineffective assistance of counsel claim, Agboola must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Strickland*, 466 U.S. at 688, 694; *Hill*, 474 U.S. at 59. The Court finds that Agboola failed this burden. Agboola fails to offer any reason or explanation why the evidence that Agboola claims his counsel should have developed would have impacted his case, given that his counsel developed other similar evidence. Because Agboola has made no showing, let alone a reasonable possibility, that he would not have entered into a plea and would have

insisted on going to trial if his counsel had developed the additional evidence, Agboola's ineffective assistance claim on this ground fails.

### 9. Plea Discussions

Agboola argues that trial counsel was ineffective for inviting and condoning the participation of the Court in plea discussions in January 2003. Agboola also asserts that he was coerced into entering his guilty and nolo contendere pleas. He further alleges that he would have proceeded to trial if "the judge had not played an advocacy role in the plea discussion." He also claims that the judge commented on the weight of the evidence against him and promised him a downward departure. Agboola claims that "[h]ad the judge not participated in the plea Discussion, petitioners would have proceeded to trial."

Agboola's assertions are belied by the record. First, the Court did not participate in plea discussions. In January 2003, there were no plea discussions between Agboola and the prosecution because Agboola's prior guilty plea had been vacated by the Court.[2] The discussions that Agboola claims involved the Court participating in plea discussions took place on the second day of trial, January 22, 2003, and related to the Court's consideration of Agboola's request to enter nolo contendere pleas to the majority of the charges against him rather than proceed with trial. Rule 11 provides that "[b]efore accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice." Fed. R. Crim. P. 11(a)(3). In initiating the discussions about which Agboola complains, the Court stated that it was

[2] *See* Order dated November 15, 2002.

required to consider the parties' views and the public's interest in the efficient administration of justice before it could accept a nolo contendere plea. During the conversations that ensued between the Court, defense counsel and the prosecution, the Court sought to understand and clarify for the parties the significance of the proffered guilty and nolo contendere pleas in order to advise Agboola appropriately pursuant to Rule 11.

Second, at no point during the discussions regarding the import of Agboola's proffered pleas did the Court assume an advocacy role as alleged by Agboola. Nor did the Court comment on the weight of the evidence in response to being accused of participating in plea discussions. Finally, Agboola's claims that the Court promised him a downward departure and "violated Federal Rule of Criminal Procedure 11" are false and are not supported by the record.

Third, Agboola's claim that he was coerced, intimidated and pressured into entering his pleas is contradicted by his statements at the time he entered his guilty and nolo contendere pleas. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (citations omitted). When asked by the Court whether he was forced or coerced to enter his guilty and nolo contendere pleas, Agboola answered in the negative. Similarly, Agboola responded "No" when asked if any guarantees were made about his possible sentence. He also responded in the negative when asked if anyone made promises to him

to get him to plead guilty. In addition, when informed that he was facing up to thirty years of imprisonment on the mail and wire fraud charges and asked if that fact changed his mind about entering his pleas, Agboola stated that it did not.

The Court finds that there is nothing in the record to support Agboola's claim that he was pressured or coerced into entering into a plea agreement. To the contrary, the record reflects that the Court properly questioned Agboola regarding his plea prior to accepting it, and that Agboola entered into his plea knowingly and voluntarily. Accordingly, the Court denies Agboola's ineffective assistance of counsel claim on this ground.

### 10. *Apprendi*

In his petition, Agboola asserts that trial counsel was ineffective for failing to raise an objection under *Apprendi* during his sentencing.[3] However, the Eighth Circuit has held that counsel's decision not to raise an issue unsupported by then-existing precedent, including an objection under *Apprendi*, does not constitute ineffective assistance. *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002). Because Agboola's trial counsel was not ineffective for failing to object to the Sentencing Guidelines under *Apprendi*, the Court need not address the issue of prejudice under the second prong of the *Strickland*

[3] The Court notes that Agboola raised this issue on his direct appeal, arguing that the district court committed error by increasing his base offense level based on evidence not charged in the indictment, determined by a jury or admitted by him. *Agboola*, 417 F.3d at 866. The Eighth Circuit concluded that Agboola failed to demonstrate plain error because he could not show "a reasonable probability the district court would have imposed a more lenient sentence under an advisory Guidelines system." *Id.* at 867.

test. *Brown*, 311 F.3d at 878. Accordingly, the Court denies Agboola's motion on this ground.

**11. Reopening of Restitution**

Agboola asserts that his trial counsel was ineffective, claiming that he failed to object appropriately to the Court's voiding of his interests in properties he sold to buyers at fraudulently-inflated prices. Agboola's ineffective assistance claim as to this issue is another improper attempt to relitigate an issue that he raised and lost on appeal. On direct appeal, Agboola argued that the district court erred in requiring him to execute "satisfactions on fraudulently obtained second mortgages on four properties." *Agboola*, 417 F.3d 860 at 870. He also alleged that the Court "erred by voiding the mortgages after he failed to execute the satisfactions." *Id.* The Eighth Circuit concluded that the Court "did not err in voiding Agboola's interest in the fraudulently obtained second mortgages" because the "second mortgages were obtained by fraud, and should be cancelled to restore the fraud victims, as much as possible to their prefraud position." *Id.*

Having challenged this aspect of the Court's sentence on appeal and lost, Agboola may not now relitigate the issue under the guise of an ineffective assistance claim. *See Dall*, 957 F.2d 572. Accordingly, the Court denies Agboola's ineffective assistance of counsel claim on the ground.

### 12. Duplication of Restitution Payments, Conflict of Interest and Double Jeopardy Violations

Agboola claims that trial counsel had a conflict of interest in his representation of Agboola, that the Court's computation of the restitution was duplicative, and that there was a violation of the double jeopardy clause in this case. Agboola has not, however, offered any specific allegations or explanations related to these claims. With respect to the claims related to restitution, as set forth above, these issues have been raised and addressed before the Eighth Circuit on direct appeal, and have also been addressed by the Court in this Order. Second, with respect to the conflict of interest claim, Agboola does not explain how his trial counsel had a conflict of interest, or even state what the conflict of interest was. Finally, Agboola offers no explanation, and the Court can discern no indication, that Double Jeopardy was implicated or violated in Agboola's plea.

Conclusory claims of ineffective assistance do no suffice to prove either deficient performance or prejudice. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). As a result of his failure to demonstrate ineffective assistance as to any of these allegations, the Court denies Agboola's ineffective assistance of counsel claim on this ground.

## B. Ineffective Assistance of Appellate Counsel

### 1. Re-opening of Restitution on Appeal

Agboola claims that appellate counsel, along with trial counsel, was ineffective in failing to challenge the Court's re-opening of restitution. As set forth above, Agboola raised this argument on direct appeal, arguing that the Court erred in requiring him to

execute "satisfactions on fraudulently obtained second mortgages on four properties." *Agboola*, 417 F.3d 860 at 870. He also alleged that the Court "erred by voiding the mortgages after he failed to execute the satisfactions." *Id.* The Eighth Circuit concluded that the Court "did not err in voiding Agboola's interest in the fraudulently obtained second mortgages" because the "second mortgages were obtained by fraud, and should be cancelled to restore the fraud victims, as much as possible to their prefraud position." *Id.*

Although he has styled this ground for relief as an ineffective assistance of counsel claim, it appears his counsel was "ineffective" only in that neither this Court nor the Eighth Circuit agreed with counsel's arguments. Agboola may not relitigate in a § 2255 motion an issue that was raised and decided on appeal, and counsel is not "ineffective" simply because counsel lost. *See Dall*, 957 F.2d at 572; *Shabazz,* 657 F.2d at 190; *Graham*, 212 F.3d at 441. Accordingly, the Court denies Agboola's petition on this ground.

### 2. Failure to Secure a Transcript of the Change of Plea Hearing

Agboola claims that appellate counsel was ineffective for failing to obtain a copy of the plea transcript, and suggests that appellate counsel should have reviewed the plea transcript to ensure that his change of plea comported with Rule 11.

"A criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal, as well as at trial." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). However, "[c]ounsel is not required to raise every potential issue on appeal." *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005). "The selection and

'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy.'" *Garrett v. United States*, 78 F.3d at 1306 (holding that counsel was not ineffective for failing to raise an issue on appeal).

Even assuming that Agboola's appellate counsel failed to secure a transcript of the plea hearing, Agboola has not offered any evidence that would rebut the presumption that his appellate counsel fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 668. As set forth above, Agboola, through his appellate counsel, raised several issues on appeal, including issues related to his sentencing, the amount of restitution, and the determination to void his interest in fraudulently-obtained second mortgages. Moreover, Agboola offers no reason or explanation showing how he was prejudiced by appellate counsel's failure to obtain a copy of the plea transcript. Because Agboola has failed to show that he suffered prejudice as a result of his appellate counsel's alleged failure to secure a transcript of the sentencing, the Court denies Agboola's ineffective assistance claim on this ground.

### 3. Computation of Laundered Funds, Multiplicity and Double Jeopardy

Agboola claims that appellate counsel was ineffective for failing to challenge the Court's computation of the laundered funds and the double jeopardy violation caused by the Court's computation. He also objects to multiplicity in the Superseding Indictment.

Agboola previously raised his argument regarding the computation of the laundered funds and double jeopardy on direct appeal, where he objected to the Court's grouping of the promotion and concealment money laundering counts on appeal. The

Eighth Circuit concluded "the district court properly grouped the counts and correctly set the base offense level at 23." *Agboola*, 417 F.3d at 866. Agboola may not attempt to relitigate this issue, which he raised and lost on direct. *See Dall*, 957 F.2d at 572. With respect to his claim that his counsel was ineffective because the superseding indictment was multiplicitous, Agboola fails to articulate or explain how or why the superseding indictment is multiplicitous. Given the conclusory nature of the allegation, no ineffective assistance claim on this basis can be sustained. *See Delgado*, 162 F.3d at 983. Accordingly, the Court denies Agboola's ineffective assistance of counsel claim on this ground.

### C. Innocence

Agboola asserts his innocence of the conspiracy and real estate flipping charges. Agboola has asserted his innocence at various stages in this case, including on direct appeal. The Eighth Circuit, however, affirmed his conviction and sentence on direct appeal, and he raises no new proof of innocence in his petition. Agboola may not attempt to relitigate this issue, which he raised and lost on direct appeal. *See Dall*, 957 F.2d at 572. Accordingly, the Court denies Agboola's motion on this ground.

## II. PRO SE MOTIONS

Agboola has also filed motions requesting the Court to appoint him counsel, and to order production of his trial counsel's notes and an audio transcript and recording of his

plea hearing.[4] Agboola also moves to strike the prosecution's response to Agboola's section 2255 motion.[5]

The Court denies the motions. First, Agboola has no right to counsel in a motion under section 2255, and the Court finds that the interests of justice do not require that one be provided. *See* 18 U.S.C. § 3006A(a)(2)(B). Second, Agboola has not indicated any reason why he is entitled to a Court order directing production of trial counsel's notes or an audio transcript or recording of his plea hearing. Finally, the prosecution's response to his section 2255 motion was timely filed in accordance with Court order.

## III. CERTIFICATE OF APPEALABILITY

For purposes of appeal under 28 U.S.C. § 2253, the Court finds that it is unlikely that some other court would decide the issues raised in this petition differently. For this reason, the Court concludes that Agboola has failed to make the required substantial showing of a denial of a constitutional right, and the Court denies a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 523 (8th Cir. 1997).

---

[4] *See* Docket Nos. 254, 259, 258, and 260.

[5] *See* Docket No. 276.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Agboola's motion for leave to proceed in forma pauperis [Docket No. 261] is **DENIED as moot**;

2. Agboola's motion to vacate pursuant to 28 U.S.C. § 2255 [Docket No. 263] is **DENIED**, and this matter is **DISMISSED with prejudice**;

3. Agboola's motion to appoint counsel [Docket No. 254] is **DENIED**;

4. Agboola's motion for release of trial counsel's notes [Docket No. 259] is **DENIED**;

5. Agboola's motions for release of audio recording or transcript of plea hearing [Docket Nos. 258, 260] are **DENIED**;

6. Agboola's motion to strike [Docket No. 276] is **DENIED**;

7. The Court does not certify the issues raised in Agboola's motion for appeal under 28 U.S.C. § 2253(c)(1)(A).

The Clerk of Court is respectfully directed to mail a copy of this Order to the defendant.

DATED: August 30, 2006
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge